WILLIAM H. POWELL *et al.*

*v.*

THE BOARD OF EDUCATION, ETC.

*Filed at Mt. Vernon February 3, 1881.*

SCHOOL LAW—*modern languages may properly be taught in schools.* Under that section of the School law, specifying the branches of studies to be taught in the common or free schools, the words, "and in such other branches, including vocal music and drawing, as the directors, or voters of the district, at the annual election of directors, may prescribe," the German or any modern language may be taught. While the medium of communication must be the English language, the teaching of the modern languages is not prohibited.

APPEAL from the Appellate Court for the Fourth District;— heard in that court on appeal from the Circuit Court of St. Clair county.

Messrs. WILDERMAN & HAMILL, and Mr. R. A. HALBERT, and Mr. J. M. DILL, for the appellants.

Messrs. G. & G. A. KŒRNER, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

We have given this case that full and careful consideration its importance demands, and find that our views on the questions raised may be stated without any very elaborate discussion. The bill was brought by a number of tax payers, against the board of education of the school district in which they reside

and in which their property is situated, to enjoin what they allege is a misappropriation of the school funds of the district.

The principal allegations of the bill upon which is based the right of relief, are:

*First.*—That complainants are advised, as a matter of law, the board of education has no power to prescribe any studies, in common schools established in such district, other than the branches of education prescribed in the qualifications for teachers, viz: orthography, reading in English, penmanship, arithmetic, English grammar, modern geography, the elements of the natural sciences, history of the United States, physiology and the laws of health, and such other branches of an English education, including vocal music and drawing, as the board of education, or the voters of the district. at the annual election of directors, may prescribe.   And—

*Second.*—That the board of education, without power or authority of law, as complainants are advised, are using the common schools of the district for instruction in the branches of a German education, and have employed teachers to teach, and who are teaching, in such schools German orthography, German reading, German penmanship and German grammar, and are misappropriating and diverting the common school funds and the funds derived from complainants and other tax payers in the district for the support of common schools in such district, to the teaching of such German branches.

. It is admitted by defendants, that the German language is one of the branches taught in the schools of the district under their direction, but it is denied it is done without authority of law, or that it is any misappropriation of the common school funds.

It is also set up in the answer, the teaching of the German language in the schools of the district does not increase the expenses of the district one dollar; that the same number of teachers now employed would necessarily be employed whether the German language is taught or not; that instructions in the English branches are not allowed to suffer on account of teach-

ing German; that at an election for members of the board of education, held in April, 1878, the question of teaching the German language as it is now taught was made an issue at the polls, and such question was decided by a majority of over two hundred votes in favor of teaching such language in the schools of the district, and that the German language has been taught in the schools of the district, without objection, for more than fifteen years.

Answers to specific interrogatories propounded in the bill disclose a few facts it may be well to state, in order to a clear understanding of the case in all its bearings. According to reports of teachers, the number of pupils participating in German instruction is from 80 to 90 per cent of the pupils enrolled for the years covered by this controversy. All pupils receive instructions in the English branches taught in the schools. Participation in the German instruction is optional with the parents of the pupils. All teachers giving instruction in German teach English branches in their respective classes. The time occupied in giving instruction in German, in the first or lowest grade, is thirty minutes, and in all other classes it is one hour per day. On the hearing in the circuit court, the bill was dismissed, and that decree was affirmed in the Appellate Court. As the case was submitted on bill and answer, the facts alleged in the answer will be taken as true.

But one question arises on the record, as the case comes before this court, and that is whether the board of education, under existing laws, have any rightful authority to allow the teaching of the German language as one of the branches to be taught in the schools of the district.

Section 1, article 8, of our present constitution declares: "The General Assembly shall provide a thorough and efficient system of free schools, whereby all the children of the State may receive a good common school education." This section of the constitution is mandatory, and, at the same time, it is a limitation upon the power of the General

Assembly. So far as it makes it the duty of the legislature to establish " a thorough and efficient system of free schools," it is mandatory. But the latter clause of the section is a limitation upon the power of the legislature as to the character of education to be afforded by the system of free schools to be established and maintained. It is not a grant of power, as was said in *Richards* v. *Raymond,* 92 Ill. 612, for the General Assembly needed no grant of power to enable it to enact any laws that might be deemed necessary to advance the welfare of the people of the State. It is apprehended, if it were not for the limitations contained in the section cited, and also in the third section of the same article of the constitution, the legislature might enact any law deemed most beneficial to the people of the State, on the subject of schools and general education. But those sections fix limits in two particulars beyond which the legislature may not go, and of course all inhibited legislation on the subject of education would be void.

Observing the constitutional restriction, the General Assembly can only establish a " system of free schools " that will afford " a good common school education." But what is " a common school education? " As the constitution is silent on the subject, it is evidently left to the wisdom of the General Assembly to declare what would constitute such an education. No doubt that body would be bound to conform to the popular understanding of what constitutes "a common school education." Without being able to give any accurate definition of a " common school," it is safe to say the common understanding is, it is a school that begins with the rudimental elements of an education, whatever else it may embrace, as contradistinguished from academies or universities devoted exclusively to teaching advanced pupils in the classics, and in all the higher branches of study usually included in the curriculum of the colleges.

The act of 1872, which is the last revision of the School law, enacts that every school established under its provisions

"shall be for the instruction in the branches of education prescribed in the qualifications for teachers, and in such other branches, including vocal music and drawing, as the directors, or the voters of the district, at the annual election of directors, may prescribe." The qualifications of teachers of the first grade, as prescribed by the act, shall be to "teach orthography, reading in English, penmanship, arithmetic, English grammar, modern geography, the elements of the natural sciences, the history of the United States, physiology and the laws of health," and of the second grade, shall be to teach "orthography, reading in English, penmanship, arithmetic, English grammar, modern geography and the history of the United States."

The difficulty in the case lies in ascertaining what studies the board of education may prescribe for the schools of the district, under the phrase "such other branches." As the branches teachers shall be qualified to teach are specifically mentioned, the argument insisted upon in support of the bill is, the branches enumerated are the kind of branches, and the language in which they are expressed in the statute is the kind of language, the legislature had in mind when it used the general terms, "and in such other branches." We will be assisted to a clearer understanding of what the General Assembly may have intended to be understood by the use of the words, "such other branches," in connection with the studies prescribed for the schools, by a brief review of the legislation concerning public schools. It may be well to observe,—first, the legislature, from its earliest action on the subject of schools, seems to have used the words "free schools," and "common schools," interchangeably, sometimes using one phrase and at other times using the other, as meaning the same thing; and, second, that the words, "English education," found in the bill, do not exist in the present statute. In the revision of 1872, of the School law, the expression, "English education," was omitted. Notwithstanding the omission of the words, "English education," from the stat-

ute, it must be conceded the education to be afforded to the children of the State by the system of free schools the General Assembly is required to establish, is what is popularly understood to be an "English education." But what is an "English education?" The sciences are taught in the languages of all civilized peoples. Mathematics, geography, geology, and other sciences taught in the schools are no more a part of an English education than they are of a German education. An education acquired through the medium of the English language is an English education; but if the same branches were taught in the German language it would be a German education. It is, therefore, the language employed as a medium of instruction that gives distinctive character to the education, whether English, German or French, and not the particular branches of learning studied. This accords with the legislative description, as, in the act of 1847, of schools entitled to support from public funds, that they shall be English schools,—that is, schools "in which the medium of instruction was the English language." Keeping these definitions in view, we may be better prepared to understand the legislation concerning schools, and may, possibly, discern the legislative intention as to what studies should be prescribed for the common schools of the State.

The constitution of 1818, of this State, contained no provisions in respect to education. But the convention that framed that instrument, and on the same day they adopted it, by ordinance accepted certain propositions made by Congress, which, if accepted by the convention, became obligatory on the United States, and could not thereafter be revoked by the State without the consent of the United States. Among the propositions accepted, was one setting apart section sixteen in every township in the State for the use of the inhabitants of such townships, for the use of schools, and another appropriating to the State a certain per cent of the net proceeds of the sale of lands lying within the State—a portion of which was to be devoted by the legislature to the encouragement of

learning, of which one-sixth part was to be exclusively bestowed on a college or university. Other propositions were accepted, but they have no bearing on our present discussion. As early as 1819 there was some legislation concerning the preservation of the public school funds. But it was not until 1825 an effort was made to provide for a system of free schools. That act was a very imperfect code, and was wholly inefficient to accomplish the purposes intended. School officers had a limited power to raise funds to support what was termed a free school, in every county in the State, which tax was to be levied "either in cash, or good merchantable produce at cash price." But that act was so amended by the act of 1827 as to wholly destroy what efficiency it had, by a provision that "no person shall hereafter be taxed for the support of any free school in this State, unless by his or her own free will and consent first had and obtained in writing." Most of the provisions of the act of 1825 relate to the management of the school funds derived from the General Government under the ordinance of 1818. It did not designate the studies that should be taught in the schools to be established, nor did it prescribe the qualifications of teachers. The liberal system of education it was expected would be inaugurated, is indicated in the preamble to the act, where it is said, "believing that the advancement of literature always has been, and ever will be, the means of developing more fully the rights of man, that the mind of every citizen in a republic is the common property of society and constitutes the basis of its strength and happiness, it is therefore considered the peculiar duty of a free government like ours to encourage and extend the improvement and cultivation of the intellectual energies of the whole." It is from this first attempt to establish a system of free schools, incomplete as it was, that has sprung our liberal and beneficent system—a system not inferior, perhaps, to the best system of public schools in any land.

The amendments to the act of 1825, made by the act of 1833, are unimportant, except, the latter act contained one beneficent provision in harmony with the generous spirit that has always pervaded the legislation of this State on the subject of public education. It provided for the admission into the schools, and the gratuitous tuition, of such children residing in the vicinity whose parents or guardians were unable to pay their tuition.

The act of February 26, 1841, making provisions for organizing and maintaining common schools, was a revision of the whole law on the subject of schools and school funds, and repealed all former acts on the same subject, except the act of 1825, which was not repealed until it was done by the act of March 3, 1845. The act of 1841 did not enumerate the studies for the common schools to be organized under it, nor did it fix the qualifications of teachers. It made it the duty of the board of examiners, if they found the applicant possessed the requisite qualifications, to give him a certificate stating the particular " branches of science " they found him qualified to teach.

Again, by the act of 1845, the school law was revised, and new provisions added. That act, for the first time, so far as we have been able to discover, specified the branches of study in which teachers should be examined, viz: Orthography, reading in English, penmanship, arithmetic, English grammar, modern geography and the history of the United States. It also contained the first definition of that class of schools the State would maintain out of the public school funds. It is that " no school shall derive any benefit from the public or town fund, unless the text-books used in said schools shall be in the English language, nor unless the common medium of communication in said school shall be in the English language: *Provided,* that this section may not apply to those who may desire to study any foreign language in said school for the purpose of learning the same." It will be observed that, although the common schools should be dis-

tinctively English in their character, yet it was permissible to teach any foreign language in them to persons desiring to learn such language.

· The act of 1847 concerning schools omitted the definition of that class of schools contained in the act of 1845, that should receive the benefit of the public and town school funds. It made it the duty of the directors, however, when certifying the schedule of scholars kept by the teacher, to certify "the school was an English one, in which the medium of instruction was the English language." Thus preserving the distinctive character of the public schools as English schools, by providing that the medium of instruction should be in the English language. That was all that was deemed necessary to make them English schools.

The constitution of 1848, like that of 1818, contained no provisions concerning schools or education, other than a provision, the General Assembly might exempt school property from taxation, and another recognizing school districts as among municipal corporations, having authority to impose taxes.

After the adoption of the constitution of 1848, there was another revision of the school law. It was by the act of February 12, 1849. This act prescribed the same qualifications for teachers in the public schools as the previous acts; but, like the act of 1847, it was silent as to the character of schools entitled to the benefits of the public school funds.

The act of February 16, 1857, was "an act to establish and maintain a system of free schools." It repealed all former acts in relation to schools, and was, by far, the most elaborate in its details of any act on the same subject passed by the General Assembly up to that date. Indeed, it seems to have been the ground work for all subsequent legislation respecting schools. It prescribes the same qualifications for teachers in the public schools .as in the last act cited, but gives a more enlarged definition than that contained in the act of 1845, of the class of schools for the maintenance of

which the public funds may be appropriated, as follows: "That each and every school or schools, of whatever grade, established or authorized to be established under the provisions of this act, shall be a school or schools for the purpose of teaching various branches of an English education, and no part of the common school fund, township fund, or of any school fund, shall be paid out or appropriated for the establishing, conducting, or the supporting in any manner, of any other character or class of school or schools, as aforesaid designated: *Provided*, that nothing herein contained shall prevent the teaching a foreign language in a common school, as aforesaid." Under this clause of the statute it was undoubtedly competent for the directors to permit a foreign language to be taught in the common schools and yet the schools ·retain their character as English schools. This is plain, from the fact that, by another section of the same act, the teacher was required to certify that the school kept by him was for the "purpose of teaching various branches of an English education."

The act of 1865, although very elaborate, was not, in fact, a recasting of all the laws respecting common or free schools. It did not purport to repeal the act of 1857 on the same subject, and did not, in fact, repeal any part of it, except so far as the provisions of the two acts were inconsistent or conflicting. It was more in the nature of an amendatory act. The very fact the General Assembly, at the same session and on the same day, passed a special act to repeal so much of section seventy-two, of the act of 1857, as exempted school officers from serving on juries in courts of record, shows it was the intention that act should stand. The act of 1865 contained some provisions not found in any former act. Concerning the description of schools to be established under its provisions, it was enacted, "Every school established under the provisions of this act, shall be for the purpose of instruction in the various branches of an English education, and no school funds shall be appropriated under this act for any

other class or description of schools : *Provided,* that nothing herein contained shall prevent the teaching in common schools of other and higher branches than those enumerated in this section." The branches enumerated in the section cited are orthography, reading in English, penmanship, arithmetic, English grammar, modern geography, and the history of the United States. It will be perceived there is nothing in this section of the act of 1865, inconsistent with the section on the same subject in the act of 1857, that permits a foreign language to be taught in the common schools, and both may stand together. But if this construction needed assurance, it may be found in the fact, the General Assembly, by the act of March 30, 1869, section three, declared that, " when the German, French, or other modern language is taught in a public school, it shall be lawful for the teacher thereof to employ or use said German or other modern language as the medium of communication in teaching the same, to the end that the colloquial forms of such language, and facility in the use thereof, may the more quickly and thoroughly be acquired by the pupils." This was a plain legislative construction, that, as the law then stood, it was permissible to teach any modern language in the common schools, and it relaxed, in a degree, the rule that had previously prevailed, that the medium of all instruction in the common schools should be the English language, and permitted instruction in German, or other modern language, to be through the medium of such language.

We now come again to the last revision of the School law as contained in the act of 1872. It is a complete code in itself, and repeals all former acts respecting schools. There have been some amendments made since to the general school law, but they are not important in this discussion. A number of studies are added by this act to those enumerated in former acts, for instruction in common schools, viz : " the elements of the natural sciences," "physiology" and "the laws of health." As to the description of schools to be established

25—97 ILL.

under this law, it is enacted, as we have seen, that "every school established under the provisions of this act shall be for instruction in the branches of an education prescribed in the qualifications for teachers, and in such other branches, including vocal music and drawing, as the directors, or voters of the district, at the annual election of directors, may prescribe."

It will be noticed that in this act are omitted the words contained in the act of 1865 descriptive of schools to be established, viz: "various branches of an English education," as well as that clause in the act of 1857 that provided, nothing therein contained should prevent the teaching of " a foreign language" in a common school. But it will not be understood that because of the omission of the words, " English education," schools to be established under the law of 1872 would be any less pronounced " English schools" in which the medium of instruction is the English language, than under former acts, nor that there is any restriction upon teaching modern languages in common schools because of the omission of the permissive clause of the act of 1857.

This summary of the legislation respecting common or free schools makes apparent the class or description of schools to be maintained out of the public school fund, no matter from what source the same may be derived. It is manifest such schools shall be what are popularly known as " English schools,"—that is, the medium of instruction in all schools established or to be established under existing laws shall be the English language, but there has been no intention expressed, in any legislation respecting schools, to inhibit the teaching of modern languages in such schools. On the contrary, the legislation, for more than a third of a century back of the act of 1872, by affirmative expressions, allowed it. It would be an unreasonable construction, because the act of 1872 is silent upon the question of teaching modern languages in common schools, it is therefore a restriction on that policy that had grown up under former legislation, and

had been so generally acted upon throughout the State. Had such been the intention of the General Assembly, it would no doubt have used apt words to express that intention.  The absence of any affirmative expressions abrogating the former policy in respect to teaching modern languages in common schools, is persuasive, at least, that that policy was not to be changed.

Under this view of the law, there can be no valid objection to teaching German or other modern language as a branch of study in common schools, "as the directors, or the voters of the district at the annual election of directors, may prescribe," where the medium of instruction in such schools is the English language.

Directors are invested by law with large discretion in all matters pertaining to the management of schools.  With the discretionary powers of officers, whether executive or judicial, courts have no rightful authority to interfere unless where there has been such abuse of their discretion as works palpable injustice or injury.

Section 48 of the school law makes school directors of each district a body politic and corporate, and gives them power to "direct what branches of study shall be taught and what text books and apparatus shall be used in the several schools."

Construing this clause of the statute in *McCormick* v. *Burt,* 95 Ill. 263, it was said:  "In the performance of the duties imposed by law upon school directors, they must exercise judgment and discretion.  What rules and regulations will best promote the interests of the school under their immediate control, and what branches shall be taught, and what text books shall be used, are matters left to the determination of the directors, and must be settled by them from the best lights they can obtain from any source, keeping always in view the highest good of the whole school."

Power is expressly given to directors to order that "other branches" than those enumerated, may be taught in the common schools, and, by another section, they are given dis-

cretion to say what those branches of study shall be. The limitation upon this power arises out of the constitution itself, and is, that such schools shall be distinctively English schools, in which the medium of instruction is the English language, and that such schools shall be what are popularly understood to be "common schools," as contradistinguished from colleges and universities. This view of the law finds sanction in the reasoning in *Richards* v. *Raymond,* 92 Ill. 612.

In *Stuart* v. *School Directors,* 30 Mich. 69, questions analogous with those involved in this decision were discussed, and much of the reasoning in the opinion is valuable as aiding us in the construction we have given to our own statute.

There is another consideration that has an important bearing on the decision. The School law now in force (sec. 8) makes the State Superintendent of Public Instruction the legal adviser of all school officers, and also makes it his duty, when requested by any such officer, to give "his opinion in writing upon any question arising under the school laws of the State." Previous statutes contain similar provisions.

It was determined, certainly as early as 1865, by the State Superintendent of Public Instruction, that while the common schools of the State must bear the distinctive character of English schools, in which the common medium of communication shall be the English language, the statute, under the expression "other and higher branches," was permissive authority to teach the modern languages in the common schools. See Dr. Bateman's School Decisions, pp. 99 and 284. A volume, containing this construction of the School law, was published in 1867 under the authority of the State.

We may take judicial notice of what is generally known,— that the German and other modern languages have been taught in the common schools in many localities in the State. For many years modern languages have constituted "other branches" of study in the common schools, and the legislature has not seen fit to forbid the course adopted. The

teaching of modern languages in our common schools has been too long acquiesced in to be now changed except by legislative action, if done at all. It ought not to be done by judicial construction.

This bill makes no case that will warrant equitable relief. It is admitted the German language is one of the branches taught in the schools of the district by the direction of the board of education, but that is allowable under the School law, as the same has been construed. Nothing contained in the bill shows the school is not an English school, in which the common medium of instruction is the English language. The mere fact, the German language is one of the branches of study prescribed, does not change its character as an English school.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

WALKER, J.: I fail to find any authority in the statute empowering the directors of schools to permit the teaching of anything but the English branches of a common school education in the common schools. In the absence of such statutory authority, I think the directors are powerless to authorize the teaching of any foreign language, and I think the judgment of the Appellate Court should be reversed.