## L. W. Chatham, Appellee, v. John W. Davis, County Superintendent of Schools, Appellant.

1. Officers, § 49*—*jurisdiction of court of equity to control official acts.* Equity will not interfere by injunction for the purpose of controlling the action of public officers, constituting inferior *quasi* tribunals, such as boards of supervisors, commissioners of highways and the like, on matters pertaining to their jurisdiction. Nor will it review and correct errors in the proceedings of such officers, the proper remedy, if any, being at law by writ of certiorari.

2. Officers, § 49*—*when courts will not interfere with acts of public officer.* Where an act to be performed by a public officer is of a judicial character which necessarily calls for the exercise of judgment and discretion on the part of the officer, the courts will not interfere with such officer in the performance of this duty.

3. Injunction, § 98*—*right to enjoin revocation of teacher's certificate.* Bill will not lie to enjoin the county superintendent of schools from revoking a teacher's certificate.

4. Schools and school districts, § 57*—*remedy where county superintendent wrongfully revokes teacher's certificate.* Where the county superintendent of schools undertakes to revoke a teacher's certificate for a cause not in fact a legal cause, the teacher has a complete remedy at law by certiorari.

5. Certiorari, § 6*—*propriety of remedy.* The common law writ of certiorari may issue to all inferior tribunals and jurisdictions in cases where they exceed their jurisdiction, and in cases where they proceed illegally and there is no appeal or other mode given to review the proceedings.

Appeal from the Circuit Court of Effingham county; the Hon. Thomas M. Jett, Judge, presiding. Heard in this court at the March term, 1913. Reversed and remanded with directions. Opinion filed October 9, 1913.

W. S. Holmes and G. F. Taylor, for appellant.

Wright Bros. & Denton and S. F. Gilmore, for appellee.

Mr. Presiding Justice McBride delivered the opinion of the court.

This is an appeal from the decree of the Circuit

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

Court of Effingham county, enjoining the County Superintendent of Schools from revoking a teacher's certificate.

It appears from the record in this case that appellee was a school teacher and had been engaged in the teaching of schools in Effingham from September 1, 1910, to June 1, 1912, and that on April 27, 1912, he had been re-employed by the Board of Education of School District No. 22 in said county for another year, beginning July 1, 1912, and ending July 1, 1913, but it is provided in said agreement that if appellee's certificate should be revoked that the contract should terminate. It further appears that prior to the city election in 1911 a difficulty arose between appellee and E. L. Damron, then mayor of Effingham, about some supposed reports that had come to the ears of Damron about what appellee had said with reference to him. That on Sunday night before the city election in 1911 appellee and Damron were engaged in a street quarrel and threatened fight near a place where religious services were being conducted and that the meeting was disturbed by the noise, vulgar and profane language used at this time. That on about May 11, 1912, at the hour of eleven o'clock at night, the appellee and said Damron were engaged in a fight on or near to one of the public streets in said city, in which fight the appellee took out his pocket knife and cut Damron in several places about the face and body. The fight caused considerable commotion and disturbance in the neighborhood. It is claimed by Damron and his friends that in the first quarrel that Damron undertook to talk to appellee privately but that appellee flew mad, threw off his coat and began to curse and abuse Damron. This is denied by appellee who says that Damron and two of his companions were attempting to surround him for the purpose, as he thought, of doing him bodily injury and that he simply stepped out in the middle of the street and told them to come out there if they wanted to talk

with him. In the fight that occurred on May 12, 1912, Damron and his friends claim that appellee without any provocation whatever assaulted Damron and cut him with a knife and that Damron to protect himself knocked appellee down and undertook to take the knife away from him. It is claimed by appellee and his friends that immediately after he had passed Damron upon the street that Damron called to him and when he stopped Damron came up and knocked him down and was on him beating and choking him and that appellee took out his penknife and cut at Damron for the purpose of making him release his grasp upon his throat, and that all he did was in self-defense. After this latter fight the friends of Damron, and some of the members of the board of education that had voted to retain appellee as teacher for another year, came to appellant Davis, then County Superintendent of Schools of Effingham county, and requested him to revoke appellee's teacher's certificate. Many of the friends of appellee requested appellant not to revoke the certificate and claimed that appellee was not to blame for the trouble that they had.

Appellee was arrested on account of this latter fight on a charge of assault to murder. Appellee and one of his solicitors, Judge Wright, in the meantime called upon appellant to ascertain from him what he was going to do about the revocation of the certificate. Appellant then told them that he would not do anything about it until after the preliminary trial of appellee which he would listen to, and later on told them that he would not take any steps in the matter until after the close of appellee's school, which would be about June 1st. After the close of school appellant consulted with the State Superintendent of Schools and his attorney as to what he should do with this matter, who advised him to give appellee notice and a hearing upon the charges. Thereafter and on June 25, 1912, appellant caused to be delivered to appellee the following communication:

Effingham, Ill., June 25, 1912.

Supt. L. W. Chatham,
        Effingham, Ill.

In compliance with the request of you and Judge W. B. Wright, made two weeks prior to the closing of the Effingham schools, and that your contract expires the last of this month (June), I now notify you in regard to my decision. Looking at it for the good of the schools that your actions have been such that you have lost your usefulness in the Effingham schools, and that you are therefore given twenty days to surrender your certificate or appear before me and prove why such action should not be committed.

J. W. Davis, Supt.''

A few days after receiving this notice appellee and his solicitor called upon appellant and asked appellant to make his charges specific and give him a copy of them, and appellant promised that he would do so and would prepare them on July 5, 1912. The specifications were prepared on July 5th, but appellee did not call for them and on the morning of July 6th appellant placed these charges in envelopes, addressed them to appellee and one to his solicitor and had them upon the desk ready for mailing at which time this writ of injunction was served upon appellant restraining him from revoking appellee's certificate, whereupon appellant abandoned any further efforts in this direction.

The bill filed by appellee in this cause alleges the difficulties that existed between him and Damron, the street quarrel and the street fight, the notice sent by appellant to appellee on June 25, 1912, and denies that appellee was in any manner to blame for the quarrel of 1911 or the fight of 1912 or that he used profane and vulgar language on either of those occasions; alleges that no cause exists for the revocation of his certificate; that he had successfully taught and improved the schools at Effingham; that he is a teacher by profession and if his certificate is revoked it will leave him without employment and will work

irreparable injury to his reputation as a teacher and render it more difficult to secure employment elsewhere. Then charges on information and belief "That said Davis (appellant) intends to revoke his certificate, being inspired to do so by Damron and friends who have insisted without cause appellee has lost his usefulness in the Effingham schools;" and concludes with the prayer for an injunction restraining the appellant from revoking such certificate, and for general relief.

To this bill appellant filed an answer setting forth that appellee was given a preliminary hearing upon said charge of assault, that appellant heard the evidence in that case; that appellee was bound over on a bond of eight hundred dollars upon a charge of assault to murder; that in April, 1911, he was engaged in a street quarrel on one of the principal streets of Effingham, used profane and vulgar language and disturbed a religious meeting; that on May 11, 1912, appellee without any provocation assaulted Damron with a knife and denies that the alleged cutting was in self-defense, and then sets forth the conference between appellee and his solicitor and appellant, as above detailed, and the notice given on June 25, 1912, but denies that he was seeking or intended to revoke the certificate without giving the appellee a fair and impartial trial; that he had no bias or prejudice in the matter in any way that he gave the notice for the purpose of giving appellee an opportunity to show why the certificate should not be revoked; that upon a hearing he would decline to revoke it unless the facts and circumstances warranted him in, so doing. Upon the issues as made up, the chancellor heard the evidence and rendered a decree making the injunction perpetual.

As we read the record in this case the first and most important question for us to determine is, Did a court of equity have the right to interfere with the County Superintendent of Schools in the investigation and

determination of these charges and to prevent him from revoking this certificate? Section 16 of chapter 122 of Hurd's Statutes provides: "The County Superintendent shall have power    *    *    *    4th.    To revoke the certificate of any teacher for immorality, incompetency or other just cause." (J. & A. ¶ 10037.)

"Equity will not interfere by injunction for the purpose of controlling the action of public officers, constituting inferior quasi tribunals, such as boards of supervisors, commissioners of highways and the like, on matters properly pertaining to their jurisdiction. Nor will it review and correct errors in the proceedings of such officers, the proper remedy, of any, being at law by writ of certiorari." High on Injunction, sec. 797.

It is said by our Supreme Court: "Since the case of *Sheridan v. Colvin,* 78 Ill. 237, if the matter was ever in doubt or the question open, it has been settled in this court that the jurisdiction of courts of chancery is confined to questions arising relative to property rights or civil rights, and that the mere right to office or of the nomination to an office, or the acts of public officers in the discharge of their official duties, cannot be regulated or controlled by the writ of injunction; and in the view we take of the law, any order of a circuit court upon such question would be void for want of jurisdiction in the court over the subject matter." *People v. Rose,* 211 Ill. 252. Where the act to be performed by an officer is of a judicial character which necessarily calls for the exercise of judgment and discretion on the part of the officer, the courts will not interfere with such officer in the performance of this duty. *Vandorn v. Anderson,* 219 Ill. 36. In a case similar to this the Supreme Court of Indiana in deciding upon the right of a school teacher to enjoin the County Superintendent from revoking his license said: "The plaintiff having accepted an appointment as a teacher under the school law is bound by all of its provisions, and has barred himself from having the propriety of

his dismissal by the local school board reviewed in any tribunal except those especially created by the legislature for the purpose." *Stone v. Fritts,* 169 Ind. 361.

We do not understand that counsel for appellee seriously contend that the County Superintendent is without power to revoke for immorality or incompetency but insists that this is an effort to revoke appellee's certificate because appellee "Had lost his usefulness in the Effingham schools." We do not so understand the reading of this notice that was given on June 25th. The notice says: "That your actions have been such that you have lost your usefulness in the Effingham schools." The loss of usefulness here, as we understand it, is the effect or result of appellee's actions; but if appellant was seeking to revoke the certificate of appellee upon the ground suggested, then upon the hearing the appellant would be required to make a record of the charge upon which the revocation was based, and if it was based upon a charge that was not for "immorality, incompetency or other just cause," then the order made revoking it could be of no avail and could be reviewed and set aside by the Circuit Court upon a writ of certiorari. In a proceeding of this character we believe that the court would require the county superintendent to give a reasonable notice of his intention to act upon the revocation of a certificate, and if the holder of the certificate desired to contest his right to revoke it it would then be the duty of the superintendent to fix upon a time and place for the hearing of it, and in a regular manner dispose of it and make a record thereof so that if he proceeded illegally in the matter his action could be revoked. "The common law writ of certiorari may issue to all inferior tribunals and jurisdictions, in cases where they exceed their jurisdiction, and in cases where they proceed illegally, and there is no appeal or other mode given to directly review their proceedings. *Chicago & R. I. R. Co. v. Whipple,* 22 Ill. 108;

*Sanner v. Union Drain Dist.*, 175 Ill. 583. So that as we understand the law, if the superintendent undertakes to revoke a certificate for "other just causes" that is not in fact a legal cause, then the party injured has a complete remedy at law by his common law writ of certiorari. It appears from the pleadings and evidence in this case that the real cause that induced appellant to institute this inquiry was the fact that appellee had been engaged in two street quarrels, or fights, with a man by the name of Damron, in one of which he had been charged with cutting with a knife, and upon both occasions with the use of profane and vulgar language upon the streets, and appellant knew at that time that appellee claimed he was not guilty of the use of profane and vulgar language and that he did the fighting and cutting in self-defense. It is said that appellant stated in one of his interviews with appellee, in a conversation with regard to the use of a knife, that "That, in itself, is a crime." That such is an erroneous view there can be no question and this may have been the thought that caused appellee to fear the result of this hearing and induced the bringing of the injunction. It was the duty of appellee and his solicitors to show, as they readily could do, that such view was an erroneous one under the circumstances stated. The position of counsel that appellant was inspired by improper motives in this matter we do not believe to be well taken, as it clearly appears from his evidence that his desire was to give the appellee a fair and impartial trial and that he would do so if tried before him, and we can see nothing in this record that contradicts this unless it be in the answer prepared by his counsel in which it is apparently undertaken to set up Damron's view of these fights; that, perhaps, would be excusable upon the ground alone that he was attempting to show that there were two sides to the controversy. We are unable to understand why appellee and his counsel did not wait to receive the specific charges before com-

mencing suit and we think they were premature in instituting this suit without giving the superintendent the opportunity, as he had agreed with them, to specify the particular charges. We have examined the pleadings and evidence in this case with much care, and while we agree with the chancellor that the preponderance of the evidence shows that appellee was acting in self-defense, and not necessarily to be blamed for what he did in the matters, we are, however, of the opinion that the chancellor was without jurisdiction to try this case. That the determination of whether or not this certificate should be revoked was, under the statute and decisions of our courts, of a judicial character to be determined solely by the County Superintendent of Schools, and for that reason the decree of the Circuit Court is reversed and the cause remanded with directions to dissolve the injunction and dismiss the bill.

*Reversed and remanded with directions.*