Ernest W. Eveland, Individually et al., Appellees, v. Board of Education of Paris Union School District et al., Appellants.

Gen. No. 9,691.

Opinion
filed March 18, 1950. Opinion modified and rehearing denied May 2,
1950. Released for publication May 2, 1950.

HAROLD W. NORMAN, of Chicago, for appellants.

BOOKWALTER, CARTER, GUNN & HICKMAN, of Danville,
and LAWRENCE B. MOORE, of Paris, for appellees; I. RAY
CARTER and ROBERT Z. HICKMAN, both of Danville, and
LAWRENCE B. MOORE, of Paris, of counsel.

MR. JUSTICE DADY delivered the opinion of the court.

On July 8, 1949, a complaint was filed in the circuit
court of Edgar county by appellee, Ernest W. Eveland,
individually, and by appellees Charles P. Brown and
Alan Jay Parrish, as taxpayers, on behalf of them-
selves and all others similarly situated, against defend-
ants appellants, the Board of Education of the Paris
Union School District, the members and officers there-
of, and the superintendent of schools.

Count 1 thereof was by Eveland, and Count 2 was
by the two taxpayers.

On July 9 such court, without notice to appellants
and without requiring bond, ordered the temporary
injunction hereafter referred to.

On August 4 such court entered an order denying
a motion of appellants to vacate such injunction. Ap-
pellants thereupon brought this appeal from the order
of July 9.

Count 1 of the complaint alleged that for about 14
years immediately prior to filing the complaint Eve-
land had been continuously employed by the Board as
a teacher of physical education and interscholastic
basketball director in and for such high school, that

310

on April 15, 1949, a contract was entered into whereby Eveland was hired by the Board for the year ending "1950," which provided, among other things, that Eveland was "to teach, govern and conduct to the best of his ability the class or classes of the schools of such district to which he shall be assigned," for a stipulated salary, and provided, that in case he "should be dismissed . . . by the board . . . for incompetency, cruelty, negligence, . . . he should not be entitled to compensation after such dismissal . . . ," and that on June 7 the Board, and a majority of the members thereof, sent to Eveland by registered mail a letter dated June 7, signed by the Board by the president and secretary and superintendent thereof, which, so far as is material, stated:

"We are directed by the Board . . . to notify you that you are hereby dismissed as a teacher in the high school . . . , such dismissal to be effective November 2, 1949. The Board has taken this action for the following reasons:"

"1. You have failed to organize and conduct a program of physical education covering twelve activities for a minimum of twelve clock hours each, as required by the University of Illinois for acceptance of credits in courses of physical education for admission to the University of Illinois."

"2. You have failed to comply with the requirements of this Board of Education that you organize and conduct a diversified program of physical education and, in particular, you have failed to comply with the instructions so given to you by The Board of Education of Paris Union School District #95 on May 11, 1948."

". . . ."

"6. You have frequently used loud and profane language in public while in charge of teams represent-

311

ing this school district in interscholastic athletic competitions.''

''7. You have caused the high school of this district to be put on probation by the E. I. League.''

''8. You have caused the high school of this district to be put on probation by the North Central Association of Colleges and Secondary Schools.''

''9. You have caused the high school of this district to be censured by the Illinois High School Association.''

''10. Your conduct on the athletic field in interscholastic competition toward officials, your indulgence in profanity, and your toleration of profanity on the part of the students, have brought the high school of this district into bad repute among the schools with which it competes and have caused schools to discontinue athletic relations with this high school, and others to threaten to do so.''

''11. You have frequently used profane and vulgar language in the presence of students of the high school of this district.''

''12. On April 21, 1949, you struck James Stephens, a student of the high school in this district, and used vulgar and profane language toward him.''

''13. In a second hour physical education class in the fall of 1948 you used vulgar and profane language toward William Welch, a student of this high school, and threatened him with physical violence.''

''14. When questioned by the Board of Education concerning the incidents of vulgar and profane language herein before specified, you falsely denied the use of such language.''

The letter concluded with this statement:

"All these matters have been repeatedly called to your attention without effect. Your refusal to comply with school policies amounts to insubordination. The Board does not believe that you are competent to conduct the type of physical education program which we wish to offer to the students in this community. It is the opinion of the Board . . . that the interest of the high school require that you be removed as a teacher for the reasons given. Your dismissal has been approved at a special meeting of the Board . . . by a majority vote of all of the members of the Board."

Count 1 then alleged that within ten days after June 7, Eveland wrote a letter to the Board, acknowledging receipt of such letter of June 7, in which he stated that:

"Without waiving any of my rights as to the legality of your present action . . . and without waiving any of my rights under the notice of employment for the coming school year, . . . I do hereby respectfully request a hearing on the charges mentioned in your letter of June 7, 1949, and I do hereby request that such hearing be public."

Such letter requested that all of the 14 charges, except No. 12, be made more specific. As to No. 12 the letter stated:

"This is a specific charge and I shall at the proper time and place be prepared to meet the same."

Count 1 then alleged that all of the charges or reasons contained in the letter of June 7 were unfounded and untrue, that the alleged illegal and wrongful acts and threatened acts of the Board "subjects or threatens to subject this plaintiff to the loss of rights and benefits to which he would be or become entitled to" under the provisions of the Teachers' Retirement System, "and will result in great and irreparable damage and injury to plaintiff and for

313

which plaintiff has no relief, except in a court of equity,'' that defendants are ''threatening to hire or employ another interscholastic basketball director and physical education teacher in the place and stead of this plaintiff at great and substantial expense and in duplication of the services and duties which plaintiff is now under contract with said Board to do and perform,'' that at the date of a meeting of the Board on April 1, 1949, there was known to the Board and all members thereof all of the supposed reasons or grounds stated in the letter of June 7, with the exception of reason No. 12, and that with full knowledge of the supposed existence of said purported grounds or causes for removal or discharge of plaintiff, the Board took ''the necessary action as above set forth to retain'' Eveland in his employment.

Count 2 adopted the allegations of count 1, and then alleged that such two taxpayers were informed and believed and stated that the Board had refused Eveland admission to the school gymnasium and locker room, that the Board threatened and intended to employ a full time teacher and interscholastic basketball director to replace Eveland, and was interviewing applicants for such position, that the Board on July 7, without right of authority, set for hearing on July 20, 1949, the alleged charges against Eveland, and had employed or threatened to employ counsel to represent the Board at such hearing, ''all of which will result in illegal diversion of the funds and moneys'' of the district, and in an increase of taxation. Count 2 then asked the same relief as prayed in Count 1.

Each count asked for the issuance of an injunction.

The order granting the temporary injunction enjoined the appellants from conducting any hearing under the notice of dismissal of June 7, from denying Eveland the salary and performance on his part of his said contract of employment, from spending public school funds for the hiring of any other person to

314

perform the services "which it is alleged in said sworn complaint of the plaintiff . . . that Eveland is under contract to perform," . . . and from "doing any act which will interfere with the status of the contractual rights of" Eveland with said Board, until the further order of the court.

Under section 6–36 of the School Code (ch. 122, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 123.610 *et seq.*]) the board of school directors has the power "to dismiss a teacher for incompetency, cruelty, negligence, immorality or other sufficient cause."

Section 7–6 provides that the board of education "has all the duties and powers of school directors" as set forth in section 6–36.

Under section 7–13 the board "has the power to dismiss and remove any teacher, whenever, in its opinion, he is not qualified to teach, or whenever, in its opinion, the interests of the schools require it, subject, however, to the provisions of Sections 24–2 to 24–7, inclusive."

Sections 24–2, 5, 6 and 7 are not applicable.

Section 24–3 provides that "Notwithstanding the entry upon contractual continued service, any teacher may be removed or dismissed for the reasons or causes provided in Sections 6–36 and 7–13, in the manner hereinafter provided. If the removal or dismissal results from the decision of the board to decrease the number of teachers employed by the board or to discontinue some particular type of teaching service, . . . . If the dismissal or removal is for any other reason or cause it shall not become effective until approved by a majority vote of all members of the board upon specific charges and after a hearing, if a hearing is requested in writing by the teacher within ten days after the service of notice as herein provided. Written notice of such charges shall be served upon the teacher at least sixty days before the effective date of the dismissal or removal, which date shall be between

315

November first and the date of the close of the school term. The hearing shall be held and the decision rendered within said period of sixty days but at least ten days shall intervene between the dates of the notice and hearing. . . . The teacher has the privilege of being present at the hearing with counsel and of cross-examining witnesses and may offer evidence and witnesses and present defenses to the charges. . . . All testimony at any hearing shall be taken under oath. . . . The board shall cause a record of the proceedings to be kept and shall employ a competent reporter to take stenographic or stenotype notes of all of the testimony. . . . If in the opinion of the board the interests of the school require it, the board may suspend the teacher pending the hearing, but if acquitted the teacher shall not suffer the loss of any salary by reason of the suspension. Before service of notice of charges on account of causes that may be deemed to be remediable, the teacher shall be given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges. The decision of the board as to the existence of reasons or causes for dismissal or removal shall be final unless an appeal to the county superintendent is taken.''

Section 24-4 provides that ''If after the hearing the teacher desires to appeal from the decision of the board, he must notify the county superintendent in writing, within ten days after the decision, stating a desire to have the case reviewed by an appeal committee. The appeal committee shall be appointed by the county superintendent of schools and shall consist of three members, none of whom shall be a resident of the district in which the teacher teaches. One of the members shall be a public school teacher, one a school board member, and the third, who shall act as chairman, shall be neither a teacher nor a board member. . . .

"The appeal committee shall confine its review to the record of the proceedings before the board, or, if a transcript of the testimony is filed with the appeal committee, to the record and transcript. The hearing before the appeal committee shall be public at the request of either the teacher or the board. The teacher and the board may be represented at the hearing by counsel. If the appeal committee finds from the record and transcript or the record, that the notice of charges by the board to the teacher did not set forth any lawful reason or cause for discharge or that there was no substantial evidence to support any lawful reason or cause for discharge, the appeal committee shall reverse the decision of the board and thereupon give written notice to the board of its decision, whereupon the teacher shall be reinstated."

Section 24–8 provides that the decision of the appeal committee shall be subject to review under the Administrative Review Act. (See ch. 110, Ill. Rev. Stat. par. 264 *et seq.* [Jones Ill. Stats. Ann. 104.094 (1) *et seq.*].)

Appellants contend that a court of equity has no jurisdiction to enjoin a Board of Education from dismissing a teacher or hiring a new teacher. Appellees contend that the rights of Eveland under the Teacher Tenure Act and the School Code are property rights, and that the protection of such property rights is within the jurisdiction of equity.

It is our opinion that, in passing upon the propriety of the injunction order appealed from, it is not necessary for us to discuss or attempt to pass upon general questions of law and procedure in cases where a statutory remedy, such as we believe is given by the School Code, offers opportunity for adequate relief.

In *Anderson v. Board of Education of School Dist. No. 91,* 390 Ill. 412, 422, the court held that the Teacher Tenure Law is a statute creating a new liability and

should be strictly construed in favor of persons sought to be subjected to its operation.

In *City of Chicago v. O'Connell,* 278 Ill. 591, 608, the court refused to enjoin the enforcement of an order of the Utilities Commission, saying: "The Public Utilities Act provides for a hearing before the commission upon that question, at which the person or corporation complained of is entitled to be heard and to introduce evidence, and if such person or corporation desires to contest the reasonableness of the order made by the commission after such hearing, he or it is by the Act allowed an appeal to the Circuit Court of Sangamon County and a further appeal to this court. The statutory method of reviewing the reasonableness of orders of the commission is exclusive."

In *Acme Printing Ink Co. v. Nudelman,* 371 Ill. 217, the court said, "Where the statutory remedy offers opportunity for adequate relief it must be exhausted before equity will act."

In *Heinroth v. Kochersperger,* 173 Ill. 205, 208, the court said, "It is fundamental that the aid of equity can only be invoked in the absence of an adequate legal remedy." (See *White v. City of Ottawa,* 318 Ill. 463.)

In this connection appellees contend that the notice given by the letter of June 7 was a final dismissal instead of a notice of an intention to dismiss.

The statute does not state that before a dismissal can be made of a teacher who has entered upon contractual continued service, for the reasons specified in sections 6–36 and 7–13, there must be given any notice of the intention to dismiss, or of a hearing of such intention, but so far as is applicable, provides that, "any teacher may be removed or dismissed" for such specified reasons, but that such dismissal *"shall not become effective until approved by a majority vote of all members of the Board upon specific charges and after a hearing, if a hearing is requested in writing by the teacher with-*

318

*in ten days after the service of notice as herein provided.''* (Sec. 24–3.) (Italics are ours.)

 Appellees contend that, because of such italicized words, before the board could consider and determine in the first instance to remove Eveland the board had to give Eveland at least ten days' written notice of the specific charges. We do not agree with such contention. This court is not authorized to rewrite the school code by reading into it a provision that requires any such notice in the first instance.

 In our opinion the procedure followed by the Board sufficiently conformed to the statute. Under the statute the dismissal of a teacher is first authorized by a majority vote of the whole board upon specific charges. That ends the matter, unless the teacher asks for a hearing. If he does ask for a hearing then the dismissal does not become effective unless thereafter approved by a majority vote of the whole board after the hearing so asked for.

██ Appellees contend that by section 24–3 "the legislature meant that the date for the service of the written charges against the teacher should be between November first and the date of the close of the school term." We consider it sufficient to say that in our opinion the reference in the statute to a date between November first and the date of the close of the school term means and refers to "the effective date of the dismissal or removal," and does not refer to the date of the service of written charges.

As we read the brief of appellees, and as they allege in the complaint, it is their contention that all of the "causes" or charges in the Board's letter of June 7 "may be deemed remediable," and that therefore "before service of notice" of such charges the statute is mandatory that Eveland should have been "given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges."

319

In *Joyce v. Board of Education of Chicago*, 325 Ill. App. 543, 551, 552, it is said "The question as to who shall determine what constitutes cause has frequently been presented to the Court, and the rule to be deduced from the authorities is that where the statute is silent as to what constitutes cause, the right to determine the question is in the tribunal having jurisdiction of the particular officer or employee."

In *Powell v. Board of Education*, 97 Ill. 375, 387, the court said: "Directors are invested by law with large discretion in all matters pertaining to the management of schools. With the discretionary powers of officers, whether executive or judicial, courts have no rightful authority to interfere unless where there has been such abuse of their discretion as works palpable injustice or injury."

■ It is our opinion that the statute gave the Board ample authority to determine in the first instance what causes were or were not remediable, and that the Board was well within its rights in apparently determining, in the first instance, and until a final hearing, that the charges, particularly when considered as a whole, were not remediable.

■■ The complaint alleged that the "purported reasons or charges" were "in fact remediable" and were "untrue," and that "the board without justification and in violation of Eveland's contractual rights attempted . . . to dismiss him . . . ." Appellees now contend that the effect of the motion to dissolve was to admit such allegations. Such a motion admits facts well pleaded, but does not admit conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest. (See *Garofalo Co. v. St. Mary's Packing Co.*, 339 Ill. App. 412.) We do not believe that a teacher can circumvent the procedure provided for by the Teacher Tenure Act by merely alleging that the charges are untrue or remediable, or by similar allegations.

■ We do not consider that any facts well pleaded in count 2 justified the issuance of such injunction. (See 47 Am. Jur. p. 308, § 15, and p. 365, § 94; also 56 C. J. p. 415, § 362.)

It is our opinion that the trial court erred in ordering the injunction in question.

Such order granting the injunction is therefore reversed, and the cause is remanded to the trial court with directions to vacate such injunction and for further proceedings consistent with this opinion.

*Reversed and remanded with directions.*

WHEAT, P. J., concurs.

O'CONNOR, J., dissenting:

I cannot agree with the conclusion reached by the court for the following reasons:

This appeal presents a narrow question. The only question presented by the appeal is whether or not there are sufficient facts stated in the complaint to support the order for injunction, and we cannot express any opinion as to whether or not the alleged conduct of the plaintiff is sufficient cause for his removal in any proceedings that might follow hereafter.

Ill. Rev. Stat. 1949, ch. 122, sec. 24–3 [Jones Ill. Stats. Ann. 123.1126], provides as follows:

"Notwithstanding the entry upon contractual continued service, any teacher may be removed or dismissed for the reasons or causes provided in Sections 6–36 and 7–13, *in the manner hereinafter provided.* If the removal or dismissal results from the decision of the Board to decrease the number of teachers employed by the Board or to discontinue some particular type of teaching service, written notice shall be given the teacher by registered mail at least sixty days before the end of the school term, together with a statement of honorable dismissal and the reason therefor, but if the position so discontinued is reinstated within a period of one calendar year it must be tendered to the teacher dismissed because of such discontinuance. If the dis-

missal or removal is for any other reason or cause it shall not become effective until approved by a majority vote of all members of the Board upon specific charges and *after a hearing,* if a hearing is requested in writing by the teacher within ten days after the service of notice as herein provided. Written notice of such charges shall be served upon the teacher at least sixty days before the effective date of the dismissal or removal, which date shall be between November First and the date of the close of the school term. . . ." (Italics supplied.)

The complaint alleges facts to show that the plaintiff had entered upon contractual continued service. The complaint reveals that notwithstanding the clear and express provisions of the Statute, no written notice of charges was served upon the plaintiff. The first document that was served upon the plaintiff read as follows, "You are hereby dismissed . . . ."

The statute provided that the dismissal shall not become effective until after a hearing, if a hearing is requested in writing by the teacher. A hearing was requested by the plaintiff. The document served upon the plaintiff did not purport to be a written notice of charges, but advised him that he was thereby dismissed and advised him that his dismissal had been approved by a majority of the members of the board. He was discharged without being given any notice of the charges against him, and without any opportunity to be heard in his own behalf, contrary to the plain provisions of the statute.

Defendants contend that a court of equity has no jurisdiction to enjoin a board of education from dismissing a teacher. They rely largely on the cases which establish the principle that courts of equity are concerned with property rights and will not interfere in political matters. That is the general rule, but the cases relied upon by defendants can be distinguished from the case at bar.

The complaint alleges that on April 15, 1949, the plaintiff was hired to teach school for the calendar year 1950 for a stipulated sum. This contractual right is as much a property right as a fee simple interest in Blackacre.

In the case of *Sheridan v. Colvin*, 78 Ill. 237, suit was brought to enjoin the mayor and others from appointing a new city marshal. The city marshal did not have a contract with the city. The Supreme Court said at page 247,

"The bill does not go upon the theory of any property right," and the matters of that political character do not come within the jurisdiction of a court of equity.

In *Heffran v. Hutchins*, 160 Ill. 550, the question involved was the right of a fire chief to his position, and the court in its opinion distinguished property rights from political rights.

In *People v. Rose*, 211 Ill. 252, the question involved was as to the right of the chairman and secretary of a county central committee to call a convention of delegates.

In *Michels v. McCarty*, 196 Ill. App. 493, the issue was the removal of a police chief.

In all of the above cases purely political questions were involved, and there was no question of property rights, and it was properly held that equity would not take jurisdiction.

Defendants also rely on the case of *Chatham v. Davis*, 183 Ill. App. 506. In this case Chatham, the plaintiff, had a contract to teach schools in Effingham for the years 1912–1913. In 1911, he engaged in a street quarrel and a threatened fight with the Mayor of Effingham, disturbing religious services being conducted nearby. On May 11, 1912, he again engaged in a fight with the Mayor of Effingham, took out his pocket knife, and cut the Mayor in several places about the face and body, causing considerable commotion and disturbance in the neighborhood. On June 25, 1912, he was advised

323

by the defendant, the superintendent of schools, that his actions had been such that he had lost his usefulness in the Effingham schools, and he was given 20 days to surrender his teacher's certificate or appear and show cause why the certificate should not be revoked. He, thereupon, filed an action in equity to enjoin the superintendent from revoking his certificate. The defendant filed an answer in which he set up that the plaintiff had been bound over to the grand jury upon a charge of assault to murder, growing out of the fight heretofore referred to. He denied that he was seeking or intended to revoke the certificate without giving the appellee a fair and impartial trial, that he had no bias or prejudice in the matter in any way, that he gave the notice for the purpose of giving plaintiff an opportunity to show why the certificate should not be revoked, that upon a hearing he would decline to revoke it unless the facts and circumstances warranted him so doing. The chancellor issued the injunction, but his decision was reversed by the Appellate Court of the Fourth District.

This case is distinguishable from the case at bar. The *Chatham* case arose upon a bill and answer. There was no question about following the procedure set down by the legislature as there is here. It must be kept in mind that there has been no issue formed in this case as yet, and that for the present purposes it must be assumed that all facts which are well pleaded in the complaint are true. Assuming this, it appears that defendants here are proceeding in violation of the statute. It also seems clear that plaintiff has a property right and equity will enjoin a threatened act to illegally interfere with his property right. In the *Chatham* case, the court said at page 511:

"Where the act to be performed by an officer is of a judicial character which necessarily calls for the exercise of judgment and discretion on the part of the offi-

cer, the courts will not interfere with such officer in the performance of this duty.''

No attempt to interfere with the judgment or discretion of the board of education on the question of when an employee should be discharged for the good of the school system should be made by this court, but proceedings to discharge a teacher must be conducted in accordance with the provisions of the statute. There has been no hearing on the merits. There is not here involved a question of opinion as to the weight of the evidence. The question as to the court's position after the matter has properly reached an issue is not before this court in the present proceeding.

Apparently, in the *Chatham* case no question was raised as to the contract creating a property right in the plaintiff. The controverted issue seemed to be that the superintendent had no right to revoke the certificate, because the teacher ''had lost his usefulness in the Effingham schools,'' and the court held that this was not the basis of the actions of the superintendent. The court said on page 514 that

''the determination of whether or not this certificate should be revoked was, under the statute and decisions of our courts, of a judicial character to be determined solely by the County Superintendent of Schools . . . .''

In this case the court should not interfere with the administration of the school system, nor with the exercise of discretion by the board of education in its dismissal of the plaintiff. If a proper proceedings is instituted by the defendants, and if the statute is followed, and if a hearing is held, and if the board of education, after hearing, determines that there is legal cause for the removal of the plaintiff, we would then be faced with a situation similar to the *Chatham* case. Needless to state, such is not the situation before us at the present time. In the *Chatham* case the court stated on page 513,

"The position of counsel that appellant was inspired by improper motives in this matter we do not believe to be well taken, as it clearly appears from his evidence that his desire was to give the appellee a fair and impartial trial and that he would do so if tried before him, . . . ."

In the complaint here it is alleged that the defendants are engaged in a scheme to deprive plaintiff of his legal rights.

Defendants further contend that equity has no jurisdiction because the plaintiff has an adequate remedy at law. The section of the School Code provides for an appeal from the decision of the board and sets up an appeal committee, one of whom shall be a public school teacher, one a school board member, and the third, who shall act as chairman, shall be neither a teacher nor a board member. (Ill. Rev. Stat. ch. 122, sec. 24–4 [Jones Ill. Stats. Ann. 123.1127].) This section further provides as follows:

"If the appeal committee finds from the record and transcript or the record, that the notice of charges by the board to the teacher did not set forth any lawful reason or cause for discharge or that there was no substantial evidence to support any lawful reason or cause for discharge, the appeal committee shall reverse the decision of the board and thereupon give written notice to the board of its decision, whereupon the teacher shall be reinstated."

Nothing is said in this statute that the appeal committee shall consider the question before us, and that is whether the board in its proceedings followed the rules laid down by the legislature as to how it should proceed. The appeal committee seems to be restricted to consider whether there was any lawful reason for discharge and whether there was any evidence to support the charge. It is doubtful if the appeals committee could render a decision on the question before us, and

it probably never was intended by the legislature that a group of laymen pass on this legal problem.

Defendants cite *City of Chicago v. O'Connell,* 278 Ill. 591 in support of their position that plaintiff must pursue his statutory remedy before resorting to a court. In that case it was held that the statutory method of reviewing the *reasonableness* of orders of the Commerce Commission is exclusive. As pointed out before, this is not an action to review the reasonableness of the decision of the board. This is a proceeding to protect the property right of the plaintiff being taken from him, in violation of a statute wherein the legislature prescribes the procedure to be followed.

Defendants also contend that plaintiff has an adequate remedy-at-law, in that he may bring an action of certiorari, to review the proceedings before the board, or mandamus to compel his reinstatement as a teacher. The allegation before us is that the defendants are engaged in a scheme and device to discharge the plaintiff, in violation of his legal rights, and the instrument served upon him before he even had an opportunity to be heard or to appear and present his side of the case stated, ''You are hereby dismissed . . . .''

The remedy of certiorari is not adequate. In *Kalman v. Walsh,* 355 Ill. 341, it was held that the plaintiff a dentist, had the right to bring an injunction to enjoin the director of the department of education and registration and the committee appointed by him from further proceedings in a certain hearing then pending before the dental committee to revoke plaintiff's license. It was held that a court of equity had jurisdiction in a case of this nature. The court stated at page 346:

''Revocation of the license of a professional man to practice his chosen profession carries with it not only disgrace and humiliation but deprives him of his means of earning a livelihood. It is the death of his profes-

327

sional life, and there is usually no resurrection after such a death. In a proceeding of this nature due process of law requires a definite charge, adequate notice, and a full, fair and impartial hearing.''

This same reasoning is applicable to this case. The dismissal of the plaintiff in this case would cause him professional disgrace, and he would lose much more than the salary to which he might be entitled. If he is going to be subjected to such a proceeding, it must be done in accordance with the method prescribed by the legislature.

In *Doe v. Jones,* 327 Ill. 387, it was held that equity had jurisdiction in a proceeding to enjoin the board of examiners of land surveyors of Cook county from proceeding with a hearing to revoke the license of the plaintiff. The court said at page 392:

''It is also contended by appellees that equity has no jurisdiction as appellant has a complete remedy at law, either by *mandamus* or *certiorari* proceedings. He alleges, however, in his bill that the board of land surveyors is about to proceed with a hearing against him, which it has no authority to hold if the Surveyors Act is unconstitutional. He is therefore properly in a court of equity seeking to enjoin the board from proceeding with an illegal act to his detriment.''

In *Ramsay v. Shelton,* 329 Ill. 432, it was held that equity had jurisdiction of a bill to enjoin a proceedings to revoke a license of the plaintiff, a physician. The court said at page 444:

''Appellees question the jurisdiction of a court of equity in this case. The prayer of the bill is that the so-called committee be restrained from holding further hearings as to the matters involved and the charges against appellant; that by reason of the character of the charges and the attitude of the committee appellant will suffer irreparable injury. The allegations of the bill raise issues proper to be considered by a court of equity.''

The allegations of the complaint in this case are to the effect that the alleged illegal and wrongful threatening acts of the board will subject the plaintiff to the loss of rights and benefits to which he otherwise would become entitled under the Teachers' Retirement System of the State of Illinois, and will result in great and irreparable damage and injury to the plaintiff.

Therefore the defendants were properly enjoined from conducting any hearings under the notice of dismissal of the plaintiff of June 7, 1949, from denying the plaintiff the salary and the performance on his part of his contract of employment with said board under the terms of the memorandum of terms of employment heretofore furnished him by said board in the month of April 1949, and from doing any act which will interfere with the status of the contractual rights of the plaintiff, Ernest W. Eveland, with said board, before any purported dismissal of the plaintiff, until further notice.

The plaintiff's contract provides that he is to ''teach, govern and conduct to the best of his ability the class or classes of the schools of said district to which he shall be assigned.'' He has no right to teach any other subject than that assigned to him by the Board of Education.

Defendants have no right to go ahead with the present proceeding because the statute has not been followed.

However, the injunction as originally issued was too broad, and the following part thereof should be stricken, ''and from spending public school funds at their disposal for the hiring of any other person to perform the services which it is alleged in said sworn complaint of the plaintiff in this case that said plaintiff, Ernest W. Eveland, is under contract to perform.'' This is interfering with the operation of the school system, and this, a court of equity has no power to do.

329

Therefore, this cause should be remanded with directions to modify said injunction order by striking therefrom the following: "and from spending public school funds at their disposal for the hiring of any other person to perform the services which it is alleged in said sworn complaint of the plaintiff in this case that said plaintiff, Ernest W. Eveland, is under contract to perform."

The remainder of said injunction order should be affirmed.