## Frank Michels, Appellee, v. Charles S. McCarty, Appellant.

### Gen. No. 6,224.

1. INJUNCTION, § 177*—*when terms "city marshal" and "chief of police" used to describe same person.* In a bill by a city official claiming to be "city marshal and chief of police," to restrain another claimant to such office from interfering with complainant's performance of duty as such, it is to be inferred that the terms "city marshal" and "chief of police" are used in the bill to describe the same office.

2. MUNICIPAL CORPORATIONS, § 119*—*how officer removed from office.* Under section 7, art. II, part I, of the Cities and Villages Act (J. & A. ¶ 1291), authorizing the mayor of a city to remove any officer appointed by him, and requiring such mayor on such removal to state his reasons therefor to the city council within ten days, an officer so removed stands suspended and is restored to office only by the failure of the mayor to file such reasons within the time limited,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

or by the disapproval by the city council by a two-thirds vote of such removal.

3. MUNICIPAL CORPORATIONS, § 119*—*when officer removed by failure of council to disapprove of action of mayor.* If a city council fails to disapprove by a two-thirds vote of the removal by the mayor of a city officer appointed by him under section 7, art. II, part I, of the Cities and Villages Act (J. & A. ¶ 1291), after the mayor has filed his reasons for such removal as required by such section, such officer stands removed.

4. INJUNCTION, § 182*—*when allegation as to nontermination of office conclusion of law.* In a bill by a city official seeking to restrain another claimant to the office held by complainant from interfering with complainant's performance of duty as such, an allegation that complainant's term of office as such official has not expired is a mere conclusion of law.

5. INJUNCTION, § 177*—*how allegation as to nomination of another person for office by mayor construed.* In a bill by a city official to restrain another claimant to the office held by complainant from interference with complainant's performance of duty, an allegation that on a named date the mayor of such city nominated another person for the office held by complainant implies either that such mayor had attempted to remove complainant or that such mayor considered that complainant's term had expired.

6. MUNICIPAL CORPORATIONS, § 112*—*when mayor right to appoint officer in place of removed officer.* Where the mayor of a city removes a city official appointed by him under the authority of section 7, art. II, part I, of the Cities and Villages Act (J. & A. ¶ 1291), such mayor has the right to appoint an officer to act for the time being, although such mayor has no power to appoint a successor to such official prior to filing his reasons and the action of the city council thereon as required by the statute.

7. INJUNCTION, § 177*—*when bill to restrain removal of city official insufficient.* Even if it be held that a court of equity has jurisdiction to restrain the removal of a city official, a bill therefor cannot be entertained which does not show that the office held by complainant was duly established by ordinance, the nature and extent of complainant's right to hold the office, and the nature of the authority by which he was sought to be removed.

8. OFFICERS, § 2*—*what is nature of office of city marshal.* The office of city marshal in a city is political in its character, being one of the agencies by which a city government is conducted.

9. EQUITY, § 1*—*what equity will not interfere with.* Courts of equity will not take jurisdiction of political controversies or under-

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

take to control the government of the State, or of cities or other governmental agencies.

10. EQUITY, § 1*—*what is subject-matter of jurisdiction of equity.* The subject-matter of the jurisdiction of courts of equity is civil property, and the injury thereto, actual or prospective, and such courts have jurisdiction of matters of a political character only under special circumstances where such jurisdiction is necessary in order to protect rights of property.

11. EQUITY, § 1*—*when no jurisdiction over appointment and right of officers to office.* Disputed questions concerning the appointment of civil officers and of their right to hold office as such are of a nature purely legal and cognizable only by courts of law.

Appeal from the City Court of Aurora; the Hon. EDWARD M. MANGAN, Judge, presiding. Heard in this court at the October term, 1915. Reversed and injunction dissolved. Opinion filed December 27, 1915.

JOHN K. NEWHALL, A. J. KELLEY and CHARLES O'CONNOR, for appellant.

ALSCHULER, PUTNAM & JAMES, MIGHELL, GUNSUL & ALLEN and MURPHY & LYON, for appellee; GARNSEY, WOOD & LENNON, of counsel.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

On November 2, 1915, Frank Michels filed in the City Court of Aurora a bill of complaint against Charles S. McCarty for an injunction, and on said day an injunction was issued as prayed in said bill, and without notice, and said injunction was served on that day. Defendant moved to dissolve the injunction for various reasons, among which were that there was no equity on the face of the bill; that the court had no jurisdiction of the subject-matter; that complainant had an adequate remedy at law; and that the relief prayed is political in its character and not for the protection of property rights. Defendant also filed a demurrer to the bill. On November 5th the court denied the motion to dissolve the injunction and over-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ruled the demurrer to the bill. Defendant prayed and was allowed an appeal to this court from the order denying the motion to dissolve the injunction. Pursuant to that order he filed an appeal bond, which was approved on the same day, and which recited an appeal both from the order granting the injunction and from the order denying the motion to dissolve. The cause was submitted at this term, pursuant to the statute, requiring us to give such an appeal precedence over other causes in this court.

The bill alleges that Michels is a resident, citizen, taxpayer and qualified elector of the City of Aurora; that for seventeen years he has been city marshal and chief of police of the City of Aurora, and is now occupying that office, and discharging the functions and duties thereof; that no proceedings have been filed before any lawful authorities asking for his removal or suspension from office, and that no action has been taken by any duly constituted authority looking to his suspension or removal from said office; that no order has been made by any authority directing him to turn over the property in his possession as such officer, and that his term of office has not expired; that though he is the lawful holder of said office, the mayor, at a council meeting on November 1, 1915, illegally appointed McCarty chief of police, and submitted that appointment to the city council, and it voted not to confirm the appointment; that later on the same day the mayor unlawfully appointed McCarty acting chief of police or chief of police *pro tem,* which said office was not vacant or open to appointment by the mayor, but was lawfully held by Michels. The bill further alleges that by virtue of such appointment McCarty claims to be city marshal and chief of police of said city, and attempts, seeks and threatens to intrude himself into said office, and to hinder and prevent Michels from discharging the duties of said office; that McCarty has not established his title to said office

in any court or before any civil service commission or other legally constituted municipal or governmental body; that McCarty will carry out his threats and intentions of usurping said office and interfering with and preventing Michels from performing the duties thereof unless immediately restrained by injunction, and that McCarty will thus inflict irreparable injury upon Michels. There are allegations of the existence of crime and disorder in Aurora, and of the dangers thereof, and of the special need the citizens have that Michels shall have charge of the police department, but there are no facts stated which tend to show that law and order will not be duly enforced by McCarty, and we consider such allegations of crime and disorder in Aurora immaterial. In oral argument, reference was made to the act to regulate civil service in cities. We find no allegation in the bill that this act has ever been adopted by the City of Aurora, nor anything from which it can be determined that if so adopted it would apply to the city marshal or chief of police. We infer that the terms "city marshal" and "chief of police," as used in this bill, describe the same office.

Under section 6 of article I of the Act for the incorporation of cities and villages (J. A. ¶ 1276), we are required to take judicial notice that the City of Aurora is organized under said general law. Section 2 of article VI of that Act (J. & A. ¶ 1345) authorizes the city council by ordinance to provide for election by the legal voters or for appointment by the mayor, with the approval of the city council, of a city marshal; and also, by an ordinance or resolution to take effect at the end of the fiscal year, to discontinue such office, and to devolve its duties on any other officer. Section 3 of article VI (J. & A. ¶ 1346) authorizes the city council by ordinance to fix the term of office of the city marshal. It is there enacted that where not otherwise provided, officers shall be appointed by the mayor, and vacancies shall be filled by the mayor with the

consent of the city council. Section 7 of article II of that Act (J. & A. ¶ 1291) authorizes the mayor to remove any officer appointed by him. He is required to report his reasons for such removal to the city council within ten days thereafter. The officer thereby stands suspended, and is restored to office only if the mayor fails to file such reasons with the city council within the time limited, or if the city council by a two-thirds vote shall disapprove of the removal. *Heffran v. Hutchins,* 160 Ill. 550. If the mayor files his reasons within the time limited and the council do not disapprove of the removal by a two-thirds vote, the officer stands removed

The allegations of this bill are vague and general, and are in various respects conclusions of law, and not allegations of fact as correct equity pleading requires. The bill does not advise the court whether the office in question was ever established by any ordinance, nor whether any term of office has been fixed for such office, nor what that term, if any, was. There is no statement whether Michels was elected by the people or appointed by the mayor with the consent of the council. If he was appointed by the mayor, there is no statement when he was last so appointed, nor when he was last confirmed, nor when he last gave bond and took the oath of office required by another section. The allegation that his term of office has not expired is a mere legal conclusion, and the facts upon which that allegation is based are not stated, and the court has no means of ascertaining from the bill whether his conclusions as to the law upon the subject of his term of office are well or ill founded. He does not aver that he has not been removed from the office of city marshal or chief of police, but only that no action has been taken by any duly constituted authority looking to his suspension or removal. The implication is that an attempt has been made in some way to suspend or remove him, but that such action was

not taken by the person or body whom he considers a duly constituted authority to take that action. It may be that the mayor did in fact undertake to remove him on the last day of October, 1915, but that it is his opinion that the mayor has no authority to do so. The fact that the mayor on November 1st nominated another person for the position implies either that there had been some attempt by the mayor to remove him or that the mayor considered that his term had expired. If the mayor undertook to remove Michels on the last day of October, while he did not thereby acquire power to appoint a successor, he no doubt did have the power to appoint an officer to act for the time being, and could, within ten days after the last of October, file his reasons for the removal with the city council, and Michels would not be again restored unless the mayor failed to file such reasons within ten days or the city council, by a two-thirds vote, refused to approve the removal; and such ten days within which he could file his reasons had not expired when this appeal was perfected in the court below. All of this could have occurred, and still every fact averred in this bill be true, if it is the legal opinion of Michels that the mayor was not the duty constituted authority who had power to take such action. This is but an illustration of the meagerness of the allegations of this bill. There being no showing in this bill that any ordinance was ever passed establishing this office, nor, if so, whether it was required to be filled by an election by the people or by an appointment by the mayor, nor any showing when Michels' last term of office began, nor for how long a period it legally existed, nor any allegation that he has not been removed by some show of authority, nor any statement by what pretended authority, if any, he has been removed, we are of opinion that if a court of equity has jurisdiction to grant an injunction to prevent the removal of a city marshal until the

title of some one else to the office has been established, still this bill would not justify such an injunction.

The office of city marshal is political in its character and is one of the agencies by which the government of the city is conducted. It is well settled that courts of equity will not take jurisdiction of political controversies nor undertake to control the government of the State or of cities or other governmental agencies. It will be instructive to consider some of the cases in which the Supreme Court of this State has applied this doctrine. In *Delahanty v. Warner*, 75 Ill. 185, Delahanty filed a bill in equity in which he alleged that he was superintendent of streets of the City of Peoria and had been unlawfully removed from his office, and he sought an injunction to restrain the mayor and aldermen from appointing his successor and from interfering with him in any way in the discharge of his duties as such officer. A temporary injunction was dissolved and the bill was dismissed for want of equity. The Supreme Court affirmed that ruling, and said that his remedy was complete at law, and that if he had not been properly removed and if a successor could not therefore be legally appointed, that question could be settled by an action at law against the person claiming to be his successor in office; and also that if by the action of the mayor and aldermen he was unlawfully deprived of any fees and emoluments pertaining to said office, he had a complete remedy therefor at law. In *Sheridan v. Colvin*, 78 Ill. 237, an election had been held for the reincorporation of the City of Chicago, and that election had been decided in favor of reincorporation under the general act, and the city council had passed and the mayor had approved an ordinance for the reorganization of the police department, but there was pending a suit at law to determine the validity of said election. Sheridan and others were police commissioners up to the time of said alleged new incorporation, and they filed a bill in equity

against the mayor, the city council and other officers to restrain all acts under said ordinance, on the ground that they possessed the only authority to control the police force and the public property belonging to the police department. A temporary injunction was issued pursuant to the prayer of the bill, but it was afterwards dissolved and the bill was dismissed, and the commissioners appealed. Three questions were presented and discussed, the third of which was whether a court of equity had jurisdiction to interfere with the action of the city council. The Supreme Court held that a court of equity had not that power; that the subject was purely political; that the subject-matter of the jurisdiction of courts of equity is civil property; that injury to property, actual or prospective, is the foundation on which the jurisdiction rests; that matters of a political character do not come within the jurisdiction of a court of equity, and that such court cannot interfere with the public duties of any department of government except under special circumstances and where necessary for the protection of rights of property. The court there quoted with approval from High on Injunctions to the effect that a court of equity is not the proper tribunal for determining disputed questions concerning the appointment of public officers or their right to hold office, such questions being purely of a legal nature and cognizable only by courts of law; and that equity will not interfere by injunction to restrain persons from exercising the functions of public officers on the ground of the illegality of the law under which their appointments were made, but will leave that question to be determined by a legal forum; and that a temporary injunction until the question of the validity of the law which defendants claim office can be determined will be dissolved. In *Dickey v. Reed,* 78 Ill. 261, which related to the same election as the case last referred to, an injunction had been issued upon another bill in equity

attacking said election, and the city council had been enjoined from canvassing the returns of the election. That injunction had been violated, and certain members of the city council had been fined for such contempt, and had appealed. It was held that elections belong to the political branch of the government and are beyond the control of the judicial power; that it was not designed by the constitution that either department of government should interfere with or control the other; that it was for the political power of the State, within the limits of the constitution, to provide how elections should be held, and how those elected should qualify and how their elections should be contested; and that a court of equity had no power to hear and adjudicate in that class of cases, and that the defendants were not guilty of contempt because the writ was void for want of power. In that opinion many illustrations are given to show how harmful the exercise of such jurisdiction might be made, and how greatly it might interfere with the function of government. *Burgess v. Davis,* 138 Ill. 578, was a bill by a citizen and taxpayer to prevent the payment of a salary to a person acting as judge of the County Court of Cook county, on the ground that by certain action he had taken he had vacated that office and was no longer lawfully in possession thereof. The court below dismissed the bill. The Supreme Court reiterated the doctrine that courts of equity will not interfere by injunction to determine questions concerning the appointment or election of public officers or their title to office, and will not interfere to enjoin the payment of salaries to *de facto* incumbents, and will not disturb a *de facto* incumbent in the receipt of the fees of the office, and have no jurisdiction on that subject. The two cases of *Fletcher v. Tuttle* and *Blair v. Hinrichsen,* 151 Ill. 41, were bills in equity attacking the validity of a certain act of the Legislature, and seeking to enjoin an election and other proceedings

thereunder. The Supreme Court said the entire object of both bills was the assertion and protection of political rights as distinguished from civil, personal or property rights. It was held that matters of a political character do not come within the jurisdiction of courts of equity, and that a court of equity has no jurisdiction to restrain an officer from the exercise of political powers. Reference was there made to *State of Georgia v. Stanton,* 6 Wall. (U. S.) 50, where it was held that the bill in equity there filed called for the judgment of the court upon a political question, and would not be entertained by a court of equity. The court also there referred to *In re Sawyer,* 124 U. S. 200, where it was held that the Federal Court had no jurisdiction to entertain a bill in equity to restrain a mayor from removing a city officer. The court there said that unless enlarged by express statute, the office and jurisdiction of a court of equity are limited to the protection of rights of property, and that it has no jurisdiction over the appointment and removal of public officers, and that to assume jurisdiction over the removal of public officers is to invade the domain of the courts of common law or of the executive and administrative departments of the government. The Supreme Court of Illinois then proceeded to reassert that wherever there are established distinctions between equitable and common-law jurisdictions, courts of equity have no authority or jurisdiction to interpose for the protection of rights which are merely political and where no civil or property right is involved, but the remedy must be sought in a court of law; that the matters involved in that case pertained solely to the political administration of government, and if the public officer charged with political administration has disobeyed the law, the party injured or threatened with injury had his remedy in a court of law and not in a court of equity. In *Heffran v. Hutchins, supra,* Heffran had been chief of the fire department, and his term of office

had expired, and the mayor had appointed other parties who had not been confirmed by the city council, and Heffran had held the office thereafter for a year, and the mayor again made several appointments which the city council rejected, and he then removed Heffran and directed him to vacate the office and to turn over the property of the department to a subordinate officer, and threatened to eject him if he refused to comply. Heffran then filed a bill in equity and obtained an injunction restraining the mayor from removing or interfering with him in the office, and that injunction was modified so as to restrain the mayor from interfering with Heffran in his office until he should be lawfully removed or his successor appointed and qualified. That decree was made perpetual, and an appeal to this court resulted in its reversal with directions to dismiss the bill (56 Ill. App. 581), and from the latter judgment the case came to the Supreme Court. It was there held, as already suggested, that the removal by the mayor took effect at once, and remained in force unless the mayor failed to file charges within the time limited or the city council by a two-thirds vote disapproved of the removal, and it was held that he could not act after such removal until those proceedings had been had, and that he should have complied with the order directing him to turn over the property to another, and he no longer had any right to discharge the functions of the office. It was there further held that a court of equity had no jurisdiction to interfere with the public duties of the departments of government, but only to maintain property rights as distinguished from political rights, and that it had no jurisdiction to determine political questions between the mayor and the council of a city concerning the appointment and removal of officers, nor to determine the right of a party to an office. In many respects this case applies closely in principle to the matter now before us. A leading case on this subject is *Marshall v. Illinois State Reformatory*, 201 Ill. 9. Marshall had been ap-

pointed physician of the reformatory, and it was held
that that was a public office. The act under which he
was appointed gave the board of managers power to
remove him for cause, after opportunity given to the
officer to be heard upon written charges. A complaint
in writing was preferred against Marshall to the board
of managers, charging him with certain neglect of duty,
and he was notified to appear before the board on a
certain day to answer the charges. On the day pre-
ceding the time so fixed he filed a bill in equity to enjoin
the board from removing him from that office, and he
therein alleged that said charges were not made in
good faith, and that a quorum of the board had con-
spired to illegally remove him from office. He had a
temporary injunction, which was dissolved and the bill
dismissed for want of equity, and that decree was af-
firmed by this court. 103 Ill. App. 65. The Supreme
Court on a further appeal said that the title to a pub-
lic office and the right to exercise its functions cannot
be determined by a court of equity unless expressly
authorized by statute. The court there quoted, with
approval from *In re Sawyer, supra,* that a court of
equity has no jurisdiction over the appointment and
removal of public officers, but that jurisdiction belongs
exclusively to courts of law, and pointed out various
methods by which a legal remedy can be had; and the
Supreme Court said that matters of a political charac-
ter do not come within the jurisdiction of a court of
equity. *People ex rel. v. Rose,* 211 Ill. 252, was an
action at law concerning a certain office and an election
to fill the same, and it was argued that the writ of
mandamus there sought from the Supreme Court
should be granted because an injunction had been
issued in equity by a Circuit Court restraining the
Secretary of State from doing certain things. The Su-
preme Court said in effect that little attention need be
paid to said injunction proceeding, because the rights
involved were purely political rights, and that the

jurisdiction of courts of chancery is confined to questions arising relative to property rights or civil rights, and that the mere right to office or the acts of public officers in the discharge of their official duties cannot be regulated or controlled by writ of injunction, and any order of the Circuit Court upon such a question would be void for want of jurisdiction of the subject-matter. In *Lavin v. Board of Commissioners of Cook County,* 245 Ill. 496, which was a bill in equity in which the Appellate Court had reversed the decree of the Circuit Court so far as it granted an injunction against the paying of compensation to a person who claimed to have been performing the duties of a public office, the Supreme Court held that equity was not the proper forum to determine the questions involved, and would not interfere by injunction to determine questions concerning the appointment or election of public officers or their title to office, nor to enjoin a *de facto* incumbent of an office from performing its duties or receiving fees or salary therefore. In *People v. McWeeney,* 259 Ill. 161, which was a proceeding to attach for contempt defendants who had violated an injunction issued by a court of equity in a matter concerning the holding of a political convention, and in which the defendants were fined for contempt and appealed to the Supreme Court and the Supreme Court reversed the conviction, the court said that courts cannot be drawn into political contests of any sort or description unless required by statute, and that any injunction for the purpose of restraining or controlling acts of a political nature is void. That an office is not a matter of property, and does not confer a right of property upon the incumbent, and that an action involving the title to or possession of an office does not involve a right of property so as to give a court of equity jurisdiction, is indicated in several of the cases above cited.

It appears that in some other jurisdictions equity will issue an injunction at the instance of the actual incumbent of an office to restrain an adverse claimant from interfering therewith until his title has been established at law. But the language of the Illinois statutes above cited is so positive and unequivocal that we conclude that such a rule cannot obtain in this state. Under the allegations and omissions of this bill, which is to be construed most strongly against the pleader, the act of the mayor in appointing McCarty chief of police *pro tem* on Nov. 1st, may well be treated as equivalent to removing Michels from that office, and terminating his right thereto unless either the mayor failed to file charges within ten days thereafter or the city council by a two-thirds vote disapproved of such removal; and *Heffran v. Hutchins, supra,* and *Delahanty v. Warner, supra,* are conclusive that in this State equity has no jurisdiction to enjoin the removal or to decide the controversy. Great confusion might result if a mayor were enjoined from enforcing his statutory authority until it was determined whether he was pursuing the precise course prescribed by law. The action invoked here could be carried to the length of causing a court of equity to assume the government of a city. Many situations can be supposed in which under such a rule a court of equity could be used to the great detriment of municipal and state governments. The illustrations given by the court in *Dickey v. Reed, supra,* to show the evil effects which might result from permitting such a jurisdiction in equity, can easily be very much enlarged.

We therefore are of opinion that the injunction was improvidently issued, and should have been dissolved. The order refusing to dissolve the injunction is therefore reversed and the injunction is here dissolved.

*Order reversed. Injunction dissolved.*