## Charles H. Sergel et al., Appellees, v. William J. Healy et al., Appellants.

### Gen. No. 26,170.

1. OFFICERS, § 39*—*who may determine title to office.* A court of equity has no jurisdiction to adjudicate the title to a public office.

2. INJUNCTION, § 110*—*what is extent of power of equity as to title to public office.* A court of equity is without jurisdiction to maintain by injunction the *status quo* of a political office which is in possession of a *de jure* or *de facto* officer and to restrain a claimant out of possession from attempting to take possession until he shall have established his title thereto by proper legal proceeding.

Interlocutory appeal from the Circuit Court of Cook county; the Hon. GEORGE F. BARRETT, Judge, presiding. Heard in the Branch Appellate Court. Reversed. Opinion filed May 3, 1920.

Statement by the Court. This is an appeal from an interlocutory injunctional order entered by the circuit court of Cook county on April 21, 1920. The bill of complaint, sworn to by Charles H. Sergel, was filed

on that day, and upon motion of the complainants the court ordered that the injunction as prayed for in the bill be issued immediately, without notice and without bond.

The complainants are Charles H. Sergel, a member of the board of trustees of the Sanitary District of Chicago and claiming to be the president of said board, and James H. Lawley and Mathias Mueller, members of said board. They stated in the bill that they filed the same as such officials and also as residents, citizens and taxpayers of said district and on behalf of all other taxpayers thereof. Five of the defendants are William J. Healy, Wallace G. Clark, George W. Paullin, Harry E. Littler and Patrick J. Carr, "individually, and as members of the board of trustees of said Sanitary District." These defendants comprise a majority of said board. The other three defendants are Leland S. Rapp, George M. Reynolds and Robert J. Taylor, respectively the clerk, treasurer and paymaster of said Sanitary District.

The prayer of the bill is, in substance, that a writ of injunction issue commanding the defendants, and each of them and their attorneys and agents, that they desist and refrain (1) from interfering with Charles H. Sergel, as president of said board of trustees, in his possession of the room, books and furniture occupied and held by him as such president, and from molesting or interfering with him in the discharge of his official duties; (2) from placing or attempting to place the defendant, William J. Healy, or any other member of said board, in the office of president of said board and from recognizing him as such president; and (3) from refusing to receive and consider any veto message of said Charles H. Sergel, as president of said board, and from interfering with his possession and control of his office as president; (4) that said defendant Rapp, as clerk of said board, refrain from omitting from the records of the proceedings of said board any

Sergel v. Healy, 218 Ill. App. 245.

such veto message or messages, ''and from signing and issuing any warrants upon the treasurer of said board and district for the payment or disbursement of any of its money or funds, *in the event* that the order, resolution or action of said board purporting to authorize any such payment or warrant shall have been vetoed by said Sergel as such president and not reconsidered by said board of trustees and not agreed to, by the ayes and nays, by two-thirds of all of the members of said board to pass the sums''; (5) that said defendant Reynolds, as treasurer of said board and district, and said Robert J. Taylor, as paymaster, refrain ''from certifying to any pay roll or paying any warrant *he may know* to have been issued in violation of this injunction''; and (6) that said defendant members and clerk refrain from withholding from said Sergel any part of the salary of president of said board under the pretext or alleged reason that they or any of them do not consider him to be said president; *''all until said Healy shall* by lawful proceeding cause the question of the correctness of his claim to be president of said board to be finally adjudicated, and until this court shall make other order to the contrary.''

It is alleged in the bill, in substance, that the Sanitary District of Chicago is a body corporate and politic and has been for more than 30 years last past, and is located in Cook county, Illinois; that it owns and has the control and management of real and personal property of the value of many millions of dollars, and annually causes a tax to be levied upon the taxable property within said district, and collects the same, to the extent of about nine million dollars; that the board of trustees of the district have the control and disbursement of the funds of the district; that said board have adopted divers ordinances, rules and regulations for the conduct of the business of the district; that each of the three complainants was duly elected at the November election of the year 1916 as a member of the

board of trustees of said district, and that Charles H. Sergel was at that time duly elected as president of said board of trustees; that thereafter each of the three complainants took the oath of office as such member and trustee, and Sergel also took the oath of office as such president; and that a certificate of their election to said offices was delivered to them and filed in the office of the clerk of said district. (A copy of the certificate is attached to and made a part of the bill. It is signed by the then county clerk of Cook county, Robert M. Sweitzer, is dated December 4, 1916, and certifies that on November 7, 1916, the said three complainants were respectively duly elected as members of the board of trustees of said district, and that said Charles H. Sergel was also duly elected as president of said board.) It is further alleged, in substance, that Sergel is, and has been continuously since his said election and qualification, in possession of said office as president of said board, and has been and is now acting in that capacity and performing the duties thereof, and is occupying the room of the president of said district; that "it is his right and duty to continue in such exercise, performance, access and possession"; and that during all the time since his election, and until the time of the occurring of the acts complained of, he has been recognized as such president by all of the trustees, officers and employees of said district, and "was and is entitled to be so recognized."

It is further alleged in the bill that said five defendant trustees, conspiring and confederating together and in accordance with a prearranged plan, on or about April 8, 1920, removed the then clerk of said board of trustees and elected the present incumbent to the office, and on the same day caused to be presented at a regular meeting of the board a motion to take all business then pending before any and all committees of the board from said committees and have the same considered by the board itself, and that all officers and

employees of the district refer, until further order, all matters to the board itself instead of to the respective committees thereof; that said resolution or order was vetoed by said Sergel, president of the board, and action thereon deferred; and that on April 15, 1920, said five defendant trustees caused to be presented at a regular meeting of the board an ordinance which provided, among other things, that each standing committee of said board should consist of the nine members of the board and that each trustee should be a member of each standing committee, that the chairman and vice chairman of each committee should be elected by a majority vote of the members of the board, and that a majority of the membership of any committee should constitute a quorum, but that said ordinance has not yet been passed.

It is further alleged in the bill that at said regular meeting of said board, held on April 15, 1920, all of the members thereof were present, and said Sergel, as president of the board, presided; that while the meeting was in progress, and in accordance with a prearranged plan between the five defendant trustees and between them and said Leland S. Rapp, clerk of the board, the defendant Wallace G. Clark, having received recognition from said Sergel as president, moved that said defendant William J. Healy be elected president of said board of trustees of said district; and then and there "claimed that a vacancy existed in such office of president and asserted that his motion was that said Healy be elected president to fill such supposed vacancy"; that said Sergel, as president, then and there refused to entertain said motion, declared the same out of order and stated that he (Sergel) "was elected for a term of six years"; that said Sergel as president did not put the motion; that thereupon said defendant Wallace G. Clark "attempted and pretended to put his said motion to a vote of said board and then and there clamorously demanded that

said clerk of the board call the roll of the members . thereof''; that said Sergel, as such president, directed said clerk not to call the roll; that thereupon said five defendant members of said board ''clamorously and illegally interfered with the proceedings of said board, and did by disorderly and violent outcries molest and interfere with said complainant Sergel in the discharge of his official duty as president and created great public confusion, * * * and by their conduct did endeavor to prevent the complainant Sergel from duly acting as such president, and said clerk did attempt and pretended to call said roll, and said defendant members did attempt and pretended to vote in favor of said so-called motion, and said defendant members by violent outcries proclaimed and asserted that said motion was carried, and that said Healy was elected and was then and there president of said board''; that said complainant members of said board did not vote on said ''supposed motion,'' either for or against the same, but that said clerk of said board ''pretended to record the said supposed vote and declared that he had so recorded the same''; that thereupon the defendant Healy ''attempted to act as president of said board''; that a motion to adjourn said meeting was made and duly put by said Sergel as president, but that, ''before the vote on such motion could be taken, said Healy, amid shouts of said other defendant members, also attempted and pretended to put said motion to adjourn''; and ''that motion, so put by said Sergel, was carried, and said meeting adjourned amid great uproar, confusion and disorder.''

It is further alleged in the bill that said board has heretofore fixed the salary of the president at the sum of $7,500 per annum and the salary of the other trustees at the sum of $5,000 per annum; that ''all of said disorderly, confusing, distracting, revolutionary and other acts'' have been undertaken and done with the purpose of avoiding the force and power of the

veto "of the duly and legally elected qualified and acting president" of said board, and for the purpose of removing certain clerks and officers from the positions which they have held in the general conduct of the business and affairs of said district; that said five defendant trustees and said defendant clerk threaten and intend to deprive said Sergel of his compensation as president of said board and to pay said compensation to said Healy, to refuse to pay salaries due to persons legally employed by said board and to pay salaries to other persons illegally, to deprive said Sergel of his rights and power of veto and to deprive the residents and taxpayers of said district of the protection of that veto; that said five defendant trustees intend to pass resolutions and ordinances appropriating the moneys of said district, and to permit said clerk and paymaster to draw orders upon the treasurer "for improper allowances and payments"; that the acts and doings herein objected to will greatly injure and damage said Sanitary District, the taxpayers thereof, and the said Sergel and the other complainants, and that unless the defendants are restrained irreparable mischief and injury will occur, etc. The complainants prayed for the issuance of a preliminary injunction, without notice and without bond, and that on final hearing such injunction might be made permanent.

After this appeal had been perfected in this Appellate Court the appellants moved for an immediate hearing, which motion was granted, and on April 30, 1920, the cause was orally argued by respective counsel. At that hearing it developed that there is a bona fide dispute between the five trustees, made defendants to the bill in the circuit court, and Charles H. Sergel and the two other trustees, complainants in said bill, as to whether, when in November, 1916, said Sergel was elected as president of the board of trustees of said Sanitary District, he was elected to such office (as distinguished from the office of trustee) for the

term of 6 years, or for only 2 years from said date. Our attention at said hearing was directed to section 3, as amended in 1907, of the Sanitary District Act (Hurd's Stat. Ill. chap. 24, par. 345, J. & A. ¶ 4286), of which section we may take judicial notice. Said act was approved May 29, 1889, and became in force on July 1, 1889. Said section 3 was amended in 1905 and was again amended in 1907. In the section, as amended in 1905, there was a clause as follows: "Any president of such board elected subsequent to the election of November, 1905, shall hold office for six (6) years and until his successor shall be elected and qualified." In the amendment of 1907 of said section 3 said clause did not appear. (3 Jones & Addington's Stat. Ill. par. 4286, note.) The pertinent portions of said section 3, as amended in 1907, and which section was in force in 1916 (when said Sergel was elected as president of said board) and which is now in force, are as follows:

"In each sanitary district organized under this Act, there shall be elected at the November election 1905, nine trustees, three of which trustees shall hold their office for a term of one year, three for a term of three years, and three for a term of five years, and until their successors shall be elected and qualified.

"At every regular county election occurring after the year 1905, there shall be elected three trustees who shall hold their office for six years, and until their successors shall be elected and qualified, to succeed those whose terms of office shall expire that year.

"Each elector in such sanitary district may vote for and designate (upon his ballot cast for trustees for said sanitary district) one of the candidates for trustees to be president of said board and the person so designated who shall receive the highest number of such votes shall be declared elected president of such board. The person so elected president of such board at the November election of 1905 shall hold office for a term of five (5) years and until his successor shall be

elected and qualified. When a vacancy shall occur in the office of president of such board, the board of trustees shall elect one of their number, who shall perform the duties of president until such vacancy shall be filled by an election."

. It was substantially agreed by respective counsel at said hearing that, if a court of equity under the facts alleged has jurisdiction of the bill and the controversy, a construction of said section 3, as amended, of said Act is involved.

C. ARCH WILLIAMS, for appellants.

WILLIS E. THORNE, for appellees.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

The main contention of counsel for appellants is that the interlocutory injunctional order appealed from should be reversed because a court of equity is without jurisdiction to entertain the bill or to enter said injunctional order. The argument is, in substance, that injury to civil or property rights is the foundation upon which the jurisdiction of courts of equity rests; that courts of equity will not interfere to protect any political right; that the right to hold a public office is a political right and involves no property rights except such as are incidental to the political right; that courts of equity will not interfere by injunction to determine questions concerning the appointment or election of public officers or their title to a particular office; that the present bill is an attempt to determine in a court of equity the title of Charles H. Sergel to the office of president of the board of trustees of the Sanitary District, and to protect him in the exercise of the powers of that office and in the emoluments thereof; and that, hence, the circuit court, as a court of equity, has no jurisdiction to entertain the bill and that the order appealed from should be reversed. Counsel, in

support of his contention and argument, directs our attention to many cases decided by the Supreme Court of this State commencing with the case of *Sheridan v. Colvin,* 78 Ill. 237, and continuing down to the recent case of *Payne v. Emerson,* 290 Ill. 490; also to several cases decided by the Appellate Courts of this State, particularly to the reported opinion of Mr. Presiding Justice Dibell in the case of *Michels v. McCarty,* 196 Ill. App. 493, decided by the Appellate Court for the Second District, wherein many of the Illinois cases are exhaustively reviewed. In 2 High on Injunctions (4th Ed.), sec. 1312, the author says:

"No principle of the law of injunctions, and perhaps no doctrine of equity jurisprudence is more definitely fixed or more clearly established than that courts of equity will not interfere by injunction to determine questions concerning the appointment or election of public officers or their title to office, such questions being of a purely legal nature, and cognizable only by courts of law. A court of equity will not permit itself to be made the forum for determining disputed questions of title to public offices, or for the trial of contested elections, but will in all such cases leave the claimant of the office to pursue the statutory remedy, if there be such, or the common-law remedy by proceedings in the nature of a quo warranto."

In *Sheridan v. Colvin, supra,* it appears that in April, 1875, an election was held in the City of Chicago to determine whether the city should incorporate under the Cities & Villages Act of 1872. Upon a canvass of the votes by the common council, a majority was declared to be found in favor of such new incorporation. Proceedings, in the nature of quo warranto, were instituted to determine the validity of such alleged incorporation. On June 28, 1875, the City Council, assuming to act under such alleged new incorporation, passed an ordinance for the reorganization of the police department. On June 30, when such quo warranto proceedings were still pending, the police com-

missioners of the city at the time of such alleged incorporation filed a bill in equity against the mayor, members of the common council, and other city officers seeking to restrain all acts under said ordinance, upon the sole grounds that said police commissioners possessed the only authority to control the police force, and its organization and government, together with the right to the custody and control of all public property, books, records, etc., belonging to said department, and that the common council had no power or authority to divest them, by means of such ordinance, of such control, functions or custody, and confer the same upon a city marshal. A temporary injunction was issued, which the court afterward upon general demurrer dissolved, sustained the demurrer to the bill, and, complainants electing to stand by their bill, dismissed the bill for want of equity. This decree was affirmed by the Supreme Court. It is said in the opinion (p. 246):

"The subject is purely political. The only title to relief shown by the bill is that arising from the mere fact of complainants being police commissioners, vested, as it is alleged, with the entire control of the police force, etc. The bill does not go upon the theory of any property right, but is an application to a court of equity to restrain the City Council and other officers of the city from carrying said ordinance into effect, on the ground that it will deprive them of the functions of their office. It is elementary law, that the subject-matter of the jurisdiction of the court of chancery is civil property. The court is conversant only with questions of property and the maintenance of civil rights. * * * Nor do matters of a political character come within the jurisdiction of this court of chancery. Nor has the court of chancery jurisdiction to interfere with the public duties of any department of government, except under special circumstances, and where necessary for the protection of rights of property."

In *Marshall v. Illinois State Reformatory*, 201 Ill. 9, Marshall filed a bill in equity to restrain the board

of managers of the reformatory, and other of its officers, from removing him from the office of physician of said reformatory. A complaint in writing had been made against him and he was notified to appear before the board to answer the charges. He filed his bill and obtained a preliminary injunction on the day previous to the time fixed for the hearing. The Supreme Court says (p. 14):

"We think it clear that the trial court did not err in dissolving the temporary injunction and dismissing the bill for want of equity, as it is well settled that the title to a public office and the right to exercise its functions cannot be determined by a court of chancery unless express authority so to do is conferred upon the court by statute, the remedy being in a court of law" (citing cases).

In *People v. Rose,* 211 Ill. 252, 253, it is said:

"Since the case of *Sheridan v. Colvin,* 78 Ill. 237, if the matter was ever in doubt or the question open, it has been settled in this court, that the jurisdiction of courts of chancery is confined to questions arising relative to property rights or civil rights, and that the mere right to office or of the nomination to an office, or the acts of public officers in the discharge of their official duties, cannot be regulated or controlled by the writ of injunction; and in the view we take of the law, any order of a circuit court upon such question would be void for want of jurisdiction in the court over the subject-matter."

In *Payne v. Emmerson,* 290 Ill. 490, a citizen and taxpayer filed a bill of complaint in the circuit court of Sangamon county seeking to enjoin Emmerson, as Secretary of State, from certifying to the correctness of three proposed questions of public policy, for the purpose of having said questions placed upon separate ballots and submitted to the electors of the State and voted upon at an election to be held on November 4, 1919. It was alleged that the certification of said questions by the Secretary of State and the submission of

the same to the electors to be voted on at said election was unlawful, and that the printing of the questions would be an unauthorized and illegal use of the revenue and moneys of the taxpayers. On October 4, 1919, the circuit court, on motion, dissolved the temporary injunction theretofore granted, sustained a demurrer to the bill and dismissed it for want of equity. This action of the circuit court was affirmed by the Supreme Court on the sole ground that said circuit court had no jurisdiction to grant the injunctional relief prayed for. The Supreme Court in its opinion says (p. 494):

"It is clearly apparent that the settling of the issues in this case upon the merits involves the settling of political as distinguished from civil, personal or property rights. * * * A political right is defined by Anderson to be 'a right exercised in the administration of government,' while a civil right is 'a right accorded to every member of a distinct community or nation.' Bouvier puts it thus: 'Political rights consist in the power to participate, directly or indirectly, in the establishment or management of government.' 'Civil rights are those which have no relation to the establishment, support or management of government. These consist in the power of acquiring and enjoying property, of exercising the paternal and marital powers, and the like.' (*People v. Barrett*, 203 Ill. 99.) To grant or refuse the injunction in this case upon the merits would amount to settling the political rights of the parties to this suit after passing upon the various contentions aforesaid. It is a general, well-established and recognized rule in this State that the jurisdiction of a court of equity pertains only to the maintenance of civil, personal and property rights, and that it has no jurisdiction over matters or questions of a political nature unless civil property rights are involved. (*Spies v. Byers*, 287 Ill. 627; *People v. McWeeney*, 259 Ill. 161; *People v. Barrett, supra.*)"

In *People v. McWeeney, supra,* it was decided, in substance, that the fact that the chairman of a county

central committee of a political party, who is the proper officer to fix the time and place for the convention of precinct committeemen, has, acting for his party, leased a building for a day and has paid part of the rent and obligated himself for the balance and for damages to the building, does not give him such a property right as authorizes a court of equity to issue an injunction to enforce a provision of the lease that no one shall enter the building without his permission, as in such case the property right is merely incidental to the political question.

In his printed brief and argument here filed, counsel for appellees states, in substance, that it is not sought by the present bill to have the court adjudicate the title of Charles H. Sergel to the office of president of the board of trustees of the Sanitary District; that the purpose of the bill is rather to protect him in the performance of the functions of that office and to protect the orderly and proper transactions of the business affairs of the district and the funds and property thereof; that the allegations of the bill disclose an attempt on the part of the five defendant members of the board of trustees to dispossess said Sergel of the office of president and install the defendant Healy in that office; and that the injunction is asked for the purpose of maintaining the *status quo* until the defendant Healy, by quo warranto proceedings, shall establish, if he can, his right to said office. Counsel admits that it is the law of this State that a court of equity has no jurisdiction to adjudicate the title to a public office, but he contends that where, as here, a party is in the possession of such an office, either *de jure* or *de facto,* and that possession is attempted to be interfered with, a court of equity has jurisdiction by injunction to maintain the *status quo,* and enjoin a claimant out of possession from taking possession of the office, by force or unseemly conduct, until such claimant shall have established his right by proceed‹

ings in the nature of quo warranto, or other proper legal proceeding. From the allegations of the bill, and particularly those as to what occurred on April 15, 1920, at a regular meeting of the board, it is difficult for us to determine what is the *status quo* as alleged, whether Sergel is still president of the board and in possession of the office, or whether Healy now is such president, and in possession. But assuming that Sergel is in possession and Healy is the claimant out of possession, as argued, we do not think that counsel's contention as to the law is correct, at least under the decisions of the courts of this State. Counsel cites several cases from other States to support his contention, but no Illinois cases. In the case of *Michels v. McCarty,* 196 Ill. App. 493, above referred to, it is said (p. 507):

"It appears that in some other jurisdictions equity will issue an injunction at the instance of the actual incumbent of an office to restrain an adverse claimant from interfering therewith until his title has been established at law. But the language of the Illinois statutes" (cases) "above cited is so positive and unequivocal that we conclude that such a rule cannot obtain in this State."

Our conclusion is, after careful consideration of the allegations of the bill and of the arguments of respective counsel, that under the settled law of this State, the circuit court, as a court of equity, was without jurisdiction to entertain complainants' bill of complaint and to enter the injunctional order appealed from. Said order of the circuit court is, therefore, reversed.

*Reversed.*

MR. PRESIDING JUSTICE MATCHETT and MR. JUSTICE BARNES concur.