People of State of Illinois ex rel. Norman Carter et al., Appellees, v. Stephen E. Hurley et al., Members of the Civil Service Commission of City of Chicago, and Richard M. Smykal, Acting Commissioner of Department of Buildings and Building Inspections of City of Chicago, Appellants.

**Gen. No. 46,505.**

First District, Second Division.
November 9, 1954.
Released for publication January 12, 1955.

John J. Mortimer, Corporation Counsel, of Chicago, for appellants; L. Louis Karton, Head of Appeals and Review Division, and Harry H. Pollack, Assistant Corporation Counsel, both of Chicago, of counsel.

No brief filed for appellees.

MR. JUSTICE ROBSON delivered the opinion of the court.

This is a mandamus action by plaintiffs, who are the unsuccessful candidates in a civil service examination for building inspector, to have the court declare void the eligible register resulting from said examination which was posted by defendant members of the Civil Service Commission of the City of Chicago, and for a temporary injunction restraining the Commission and the Acting Building Commissioner of the City of Chicago from certifying as building inspectors anyone named on the eligible register. The trial court granted a temporary injunction from which this appeal is taken. Plaintiffs (appellees) filed no brief in this court.

Defendants contend that the trial court erred in exercising equity powers and granting a temporary injunction because the complaint does not set out ground for equitable relief and plaintiffs have an adequate remedy at law.

The record reveals that plaintiffs, except Carter, who was a temporary plumber, were temporary building inspectors in the building department of the City of Chicago. As temporary employees they could be hired for a period not to exceed 60 days and could be discharged at any time. The position of building inspector is classified under civil service. Vacancies existed in this classification and defendants issued a call on February 24, 1954, for a written examination which was held on April 10, 1954. There had been 518 applications filed for the examination. Four hundred and eighty-five applicants took the examination and seventy-seven passed with a grade of 70 or upward. None of plaintiffs passed this examination. On May 12, 1954, the Commission posted an eligible list of the persons passing the examination.

■■ A complaint incorporating a prayer for injunctive relief must provide grounds upon which a court can fix its equitable jurisdiction before an injunction may issue. It must appear from the complaint not only that the acts complained of are unauthorized and injurious but that they are injurious to civil, personal or property rights as distinguished from rights political in nature. Fletcher v. Tuttle, 151 Ill. 41, 57; see also Payne v. Emmerson, 290 Ill. 490, 494; Elder v. Mall, 350 Ill. 538, 541; Sergel v. Healy, 218 Ill. App. 245, 254. Defendants' acts of which plaintiffs complain are those of public officers and are political in character. Payne v. Emmerson, supra. Positions or places held under civil service are in the nature of public offices, political in character, and in these plaintiffs have no property right. People v. City of Chicago, 337 Ill. 100, 104; People v. Kipley, 171 Ill. 44, 71.

If, therefore, plaintiffs have a remedy it must be at law. Plaintiffs complain that defendants did not properly exercise their functions under the law. Plaintiffs' remedy is therefore by way of mandamus. D. Gottlieb & Co. v. City of Chicago, 342 Ill. App. 523, 531; see also People v. City of Chicago, supra; People v. Kipley, supra. But plaintiffs in the instant case combined their mandamus proceeding at law with the equitable prayer for injunctive relief. In American Civil Liberties Union v. Chicago, 3 Ill.2d 334, a civil right was involved and the court held that a prayer for injunction could properly be made in a suit for declaratory judgment. We find, however, no authority in support of the proposition that plaintiffs may, in a proceeding which involves a political right only, join both mandamus and injunction, and thereby avoid the settled law in this State that courts can entertain no equitable jurisdiction in actions involving rights solely political in character. The authority we find is directly contrary. See Delahanty v. Warner, 75 Ill. 185; Sheridan v. Colvin, 78 Ill. 237; Fletcher v. Tuttle, supra, and cases therewith cited; and D. Gottlieb & Co. v. City of Chicago, supra. We therefore conclude that the trial judge erred in entering the temporary injunction.

Defendants make a further contention that the trial court erred in basing the temporary injunction on an erroneous conclusion that the Cities Civil Service Act made a physical examination prior to the written examination mandatory and that such physical examination was a necessary competitive factor. We are not called upon to decide that point in view of our decision that the trial court erred in granting the temporary injunction. However, in an effort to avoid further litigation in this cause we express our views. In the mandamus portion of its complaint, plaintiffs' principal contention is that section 6 of the Cities Civil Service Act, Ill. Rev. Stats., 1953, ch. 24½, par. 44 [Jones Ill. Stats. Ann. 23.045], made mandatory a phys-

ical examination prior to the written examination for building inspector and that such physical examination was a necessary competitive factor. The pertinent parts of this section read as follows:

"All applicants for offices or places in said classified service, . . . shall be subject to examination, which shall be public, competitive, and open to all citizens of the United States, with specified limitations as to residence, age, health, habits and moral character. . . . Such examinations shall be practical in their character, and shall relate to those matters which will fairly test the relative capacity of the persons examined to discharge the duties of the positions to which they seek to be appointed, and shall include tests of physical qualifications and health, and when appropriate of manual skill . . . .

"In the event that any applicant for an office or place in the civil service (who has been found eligible for appointment and whose name has been placed upon the register provided for in this Act) has not been appointed to such office or place within sixty days from the date of his examination as to physical qualifications and health, the Commission shall cause a second examination to be made of said applicant prior to his appointment and within sixty days of such appointment, which second examination shall be practical in character and shall relate to the cardiac, pulmonary, arterial, renal and sane condition of said applicant. If, upon such second examination, the physical, or mental condition of said applicant shall be found to be less than the minimum standard fixed by the rules of such Commission, said applicant shall not be appointed. The name of said applicant shall be retained upon the register of candidates eligible for appointment and when again reached for certification and appointment the said applicant shall be again examined as herein provided, and if the physical or mental condition of the said applicant shall again be found to be less than the mini-

mum standard fixed by the rules of such Commission, said applicant shall not be appointed and the name of said applicant shall be removed from the said register."

The only testimony heard by the trial court pertained to this issue. Defendants' witness Osborne, secretary and chief examiner of the Commission, testified that a physical examination was given after the written examination and prior to the certification from the eligible register; that only in those positions where certain physical attributes were essential to perform the duties of the position such as a policeman, fireman, etc. was the physical examination given first to qualify the applicant for taking the examination.

■ ■ It is clear from an examination of the language of section 6 that the physical examination is solely for the purpose of determining whether the applicant has the required health to perform the position he is seeking. Only where a position requires certain physical attributes would it be practical or logical to give the physical examination before the applicant has passed the written examination. The Cities Civil Service Act vests the Commission with liberal discretion relative to giving physical examinations. People v. City of Chicago, 131 Ill. App. 266; People ex rel. Clark v. Hurley, 343 Ill. App. 182, 192.

In the instant case there were 518 applications for the examination and only 77 passed the written examination. The position of building inspector does not require the same special physical attributes as a policeman and fireman. He need have only such good health as is necessary to perform duties which are not of a laborious nature. The giving of physical examination before applicants earn a place on the eligible register through written examination would accomplish no purpose essential to the proper functioning of the Cities Civil Service Act, but would add an undue burden and expense on the Commission.

30

Section 6 provides that civil-service examinations shall be "competitive, . . . with specified limitations as to residence, age, *health,* habits and moral character." Minimum good health is a requirement, but it is not a competitive factor, just as residence, age, habits and moral character are not competitive factors. A physical examination is not the kind of examination in which one applicant competes with another. An applicant either has minimum good health or he does not. The purpose of requiring the minimum physical qualifications and minimum good health has nothing to do with matters which "test the relative capacity of the persons examined to discharge the duties of the positions to which they seek to be appointed."

Factors such as experience or manual skill do relate to the relative capacity of the various applicants examined, and the examination in that respect is "competitive." However, "tests of physical qualifications and health" are only intended for the purpose of determining whether the applicant has the minimum physical health to be employed at the position which he is seeking. These tests are not matters upon which an applicant has any cause for complaint if not included in the competitive examination. We conclude that the factor of health was not intended by the statute to be a subject for competitive examination.

The order of the trial court granting the temporary injunction is reversed.

Order reversed.

SCHWARTZ, P. J., concurs.

McCORMICK, J., took no part.