People of the State of Illinois ex rel. George A. Trapp et al., Petitioners-Appellees, v. Joseph H. Tanner, President of the Board of Trustees of Village of Evergreen Park, Louis Bruinius et al., Trustees of the Village of Evergreen Park, and Erwin W. Sack, Treasurer of the Village of Evergreen Park, Alan L. Strand et al., Members of the Board of Fire and Police Commissioners of Evergreen Park, and Louis Ridderling and the Village of Evergreen Park, Respondents-Appellants.

Gen. No. 47,248.

First District, First Division.

September 29, 1958.

Released for publication October 23, 1958.

Chino & Schultz, of Chicago, for respondents-appellants.

Michael F. Ryan, of Chicago (Richard F. McPartlin, Jr., of counsel) for petitioners-appellees.

JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order entered March 18, 1957, which adjudged the individual respondents (defendants) in contempt of court and ordered them committed to the county jail until they complied with a mandamus judgment order entered April 7, 1955, directing the reinstatement of petitioners (relators) as police officers of the Village of Evergreen Park, as-

signing them duties, and paying them salaries attached to and appropriated for such services from April 7, 1955 to the date of reinstatement. A prior appeal and a labyrinthian series of interlocutory proceedings, motions and orders, directly and indirectly involved, require a more ample statement than is ordinarily necessary for an understanding of the issues.

The case was heretofore before us on appeal from the order of April 7, 1955, directing the issuance of the writ of mandamus and entering judgment for back salaries. (People ex rel. Trapp v. Tanner, 10 Ill.App.2d 155 (1956).) On April 3, 1956 this court decided that petitioners had been unlawfully discharged and ordered their reinstatement to the village police force. The court, however, reversed the judgment for back salaries and remanded the cause for further proceedings. Thereafter, at a special meeting of the Village Board held April 21, 1956, it was decided to reinstate petitioners pending appeal and clarification of the Appellate Court decision. Pursuant to that decision the respondents sent letters to petitioners, ordering them to report for work April 27, 1956.

Prior to their discharge and continuing to April 27, 1956, petitioner Trapp was the part owner of a car wash and Gallagher was an employee of Lever Bros. Atherton had been employed by the Pennsylvania Railroad for twelve years prior to his discharge, but left that position in March 1955 when he moved to Michigan to operate a summer resort. That was the employment status of petitioners as late as March 1957, the last date shown by the record.

Rule No. 43 of the Rules and Regulations of the Police Department of the Village of Evergreen Park, effective March 1, 1955, provides:

"Members of the Department shall devote their entire time and attention to their duties. All members of the Department are prohibited from following any

140

other calling, business or occupation or being engaged in any business other than the business of the Police Department."

When petitioners reported for work pursuant to the letters of April 24, 1956, they were advised that under the rules and regulations they were not qualified to serve on the police force. When Gallagher informed respondents that he was on leave of absence from Lever Bros., he was restored to the force, but from that time to May 7, 1956, he sat on a bench in the station pending the outcome of his bond application. He left that post without permission May 7, 1956. It is his claim, as it is that of the other petitioners, that these moves of the village were part of a design to avoid compliance with the court's order of reinstatement. For this there is some support, but it should also be noted that the village officials were confronted with a dilemma in that they were required to reinstate police officers who by rules and regulations properly adopted by the village were disqualified to serve as such officers.

Charges against Trapp, Atherton and Gallagher based on their disqualifications under the rules and regulations were filed with the Village Board of Fire and Police Commissioners in a letter dated April 27, 1956. These charges were originally set for hearing May 10, 1956, but due to insufficient notice to petitioners, hearings were rescheduled for May 22, 1956. On that same day, May 22, 1956, relators filed a petition for a rule on respondents to show cause why they should not comply with the judgment order of April 7, 1955 commanding their reinstatement and the payment of their salaries. They also asked for the issuance of a temporary restraining order restraining respondents from taking any further steps or proceedings or from conducting any hearings on the charges filed against them, until the further order of the court. On that same

day, May 22, 1956, the court entered an order pursuant to that petition, requiring respondents to reinstate petitioners and on their failure to do so, to show cause why they should not be adjudged in contempt. The court in the same order enjoined respondents Strand, Lavery and Bitterman, as members of the Board of Fire and Police Commissioners, from taking any further steps or proceedings or conducting any hearings on the charges filed against petitioners. A bond such as is required by statute relating to temporary injunctions was not excused by the order nor was one given.

On May 28, 1956, defendants filed a petition with the Supreme Court for leave to appeal from the decision of the Appellate Court affirming the order of April 7, 1955. The Supreme Court denied the petition September 21, 1956. On August 14, 1956, defendants moved to vacate the order of May 22 on the ground that the Appellate Court had recalled the mandate upon which relators' petition was based. On October 5, 1956, an amended motion was made to vacate the injunction order, stating as grounds therefor the subsequent recall of the mandate, and charging that the restraining order was invalid; that the issuance of the injunction without bond was contrary to statute; that no prayer was contained in the complaint for injunction; that the court was without jurisdiction to interfere by injunction with the administrative procedures of respondents as a civil service board; that the petition for injunction does not show that petitioners had exhausted their administrative procedures; and that the court lacked jurisdiction to interfere by injunction with the conduct of hearings of a civil service board.

On that same day, defendants filed an answer to the petition for rule to show cause and alleged that at the date of the filing of the petition, defendant's time to

142

file a petition for leave to appeal from the order of the Appellate Court had not expired and did not expire until May 28, 1956. They denied that they had been guilty of noncompliance with the judgment order; alleged that they had reinstated petitioners to their positions April 27, 1956; that Gallagher resigned May 7, 1956 and that his resignation was accepted; that Trapp and Atherton refused to accept reinstatement unless they were granted ninety days within which to decide whether they wanted to be reinstated; and that all the petitioners were suspended May 7, 1956, pending hearing on the charges brought against them. The answer further sets up that defendants desired to have a judicial determination of the amounts due petitioners; and that the court improperly enjoined the holding of civil service hearings. The court, after hearing evidence, entered the order of March 18, 1957, from which this appeal was taken.

On August 27, 1957, during the pendency of this appeal, the Board of Fire and Police Commissioners wrote to relators, directing them to report for work September 9, 1957. Subsequently, on January 27, 1958, relators filed a motion in the Appellate Court to dismiss this appeal, contending that the letters of August 27 amounted to reinstatement of relators and therefore an admission by defendants that they had not acted in compliance with the mandamus order of April 7, 1955. Defendants denied this and alleged that the Board of Fire and Police Commissioners has no authority to order reinstatement and, further, that these letters were in consequence of the reinstatement of April 1956. That motion was taken with the case.

The court has been advised by the parties litigant that Gallagher and Atherton resumed their positions in response to the letters of August 27, 1957. Trapp requested and was granted a leave of absence, before the expiration of which he resigned. Subsequently

Atherton resigned and still later, on February 15, 1958, Gallagher resigned.

At the hearing on the order appealed from, defendants, in an effort to show that relators never intended to accept reinstatement, offered to prove that the relators had earned amounts equal to or in excess of that which they would have earned as policemen. The rate of pay for a village policeman for the fiscal periods ending April 20, 1955, through April 30, 1957, was $3900, $4200, and $4410, respectively. Defendants were able to introduce specific figures on earnings with respect to Gallagher only, who earned $5245 in 1954, $5044 in 1955, and $7393 in 1956 while in the employ of Lever Bros.

██ The resignations of relators have made compliance with the mandamus order of April 7, 1955 impossible, but insofar as punishment for alleged contempt may be involved, the propriety of the issuance of the rule to show cause is not moot. We are of the opinion that issuance of the rule to show cause May 22, 1956, which is the basis for the contempt citation, was premature. At the time that rule was entered, defendants had expressly stated in a resolution of the Village Board that it was their intention to seek a review of the order of the Appellate Court, and they had until May 28, 1956, to file a petition for leave to appeal to the Supreme Court. Defendants' action, if it amounted to refusal to reinstate relators at the time, did not affect relators' right to ultimate reinstatement and to back salaries, despite the fact that their offices were occupied by replacements who performed the duties of such offices and received compensation. Following relators' discharge, it was incumbent upon the village to hire replacements in order to maintain an adequate police force. By issuing a rule to show cause, the trial court resolved against defendants the very issue de-

144

fendants were still seeking to have determined by the Supreme Court.

In People v. Kelly, 391 Ill. 136 (1945) the Supreme Court refused to issue writs of mandamus directing the reinstatement of certain police officers while an appeal was pending in the Appellate Court. The Supreme Court said (pp. 138–9) that if mandamus were to issue, it would in effect be a determination of the dispute then on appeal. Furthermore, the court said that the issuance of a writ should in part be based on whether " 'it will operate impartially, create confusion and disorder, and whether it will or will not promote substantial justice.' " Just as in the instant case, the rights of the relators in the Kelly case to ultimate reinstatement and back salaries could not be affected by a failure to reinstate immediately, but, unlike the situation in the Kelly case, here there was a possibility that reinstating relators would require displacing other police personnel before judicial confirmation of relators' right to their jobs had become conclusive. A further problem confronted the village officials. If they complied promptly with the court's order of reinstatement, they would be restoring to office men who were not qualified under the then existing rules. When the rule to show cause was issued, over two years had passed since the discharge of Trapp, Atherton and Gallagher. A further delay pending determination of defendants' efforts to prosecute an appeal would in no way have jeopardized relators' rights.

■ The propriety of the issuance of the injunction restraining the Board of Fire and Police Commissioners from meeting to hear charges filed against relators is also raised in this appeal. Relators have resigned. Since they are seeking back wages dating from the original issuance of the mandamus, this question must be decided in order to determine the date to which damages should be permitted to accrue. The

trial court found that the purported reinstatement of relators April 27, 1956, was not in fact a bona fide reinstatement and that the charges filed against them were filed in an effort to circumvent the mandamus order of April 7, 1955. Assuming that there was a basis for the finding of fact, it still did not warrant an order enjoining the Board of Fire and Police Commissioners from conducting hearings on these charges on the assumption that such hearings would have been conducted unfairly. On April 27, 1956, when the charges were filed, and May 22, 1956, the date set for hearings, each of the relators, as we have said, was in violation of the Rules and Regulations of the Village Police Department. If the Board had been permitted to meet and if it had acted unfairly, relators' rights would not have been impaired, since they would have had redress under the Administrative Review Act. Ill. Rev. Stats. 1957, Ch. 110, Sec. 264, et seq. The courts of this state have refused to interfere with administrative hearings and have forced complainants to exhaust their administrative remedies before appealing to the judiciary. Bright v. City of Evanston, 10 Ill.2d 178 (1956); Malkin v. City of Chicago, 6 Ill. App.2d 151 (1955); People ex rel. Carter v. Hurley, 4 Ill.App.2d 24 (1954); People ex rel. Loftus v. Keller, 332 Ill. App. 389 (1947). The injunction restraining the Board from conducting hearings should not have issued.

The only question remaining is the period for which the village is liable for back salaries and the defenses the village can raise as setoffs. Relators' claims for back wages date from April 7, 1955, the date of the issuance of the mandamus order. Closing date for the payment of such compensation is more elusive because of the confusion created by the erroneous order enjoining the Board of Fire and Police Commissioners from passing upon charges filed against re-

146

lators. The injunction was obtained at relators' request. They thus prevented the Board of Fire and Police Commissioners from taking action, although there was no adequate reason for assuming they would have decided the matter against relators or that they would not have given relators an adequate opportunity to arrange compliance with the rules in order to qualify for reinstatement. We therefore hold that May 22, 1956, the date of the injunction, is the date to which loss of wages should be computed.

██ ██ In determining the amount of damages to be awarded, the village contends that de facto officers were employed and that petitioners had earnings during that period which should be set off against their salaries. The Village of Evergreen Park is subject to provisions of the Fire and Police Commissioners Act which provides, in part, at paragraph 2, section 11, that:

"All officers and members of either the fire or police department of any municipality holding their positions by virtue of one of the methods specified in paragraph one of this section, are city officers and shall be entitled to the protection afforded by this article."

Relators must therefore be characterized as municipal officers for the purpose of assessing their damages. The law is clear that a wrongfully discharged municipal officer is entitled to the salary which attaches to his office, without any setoff for amounts he could have or did earn from other employment. Kelly v. Chicago Park District, 409 Ill. 91 (1951). Furthermore, once there has been a judicial determination that a municipal officer has a right to the office, the defendant in a suit for back salary *accruing after* such judicial determination cannot raise as a defense, payments to de facto officers (Corbett v. City of Chicago, 391 Ill. 96 (1945)) or the fact that the appropriation

147

covering a relator's office has been exhausted (People ex rel. Campbell v. Kapp, 295 Ill. App. 92 (1938)).

Upon remandment of this case, in order that there may be no confusion with respect to further proceedings, the trial court in determining the amount of the judgments for salaries to be entered in favor of relators shall compute the amount of the salary appropiated for the office held by the respective relators from the date of their discharge, May 14, 1954, to May 22, 1956, the date of the entry of the order restraining the Board of Fire and Police Commissioners from hearing charges against them. From this should be deducted payments made to de facto officers employed by the village for services rendered from May 14, 1954 to April 7, 1955, the date of the entry of the mandamus judgment order. However, with respect to relator Gallagher, the sums paid him for services as a police officer of the village from April 27, 1956 to May 7, 1956 should be set off against his claim for back wages.

The motion to dismiss the appeal is denied. The judgment is reversed and the cause is remanded with directions to take such further proceedings as are not inconsistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

McCORMICK, P. J. and ROBSON, J., concur.